1 ANDREW C. MUZI, ESQ., SBN 132282
  DANA L. HARRIS, ESQ., SBN 220668
2 MUZI & ASSOCIATES
  1851 E. FIRST STREET, SUITE 1257
3 SANTA ANA, CALIFORNIA 92705-4017
  Telephone (949) 553-9277
4 Facsimile (949) 553-9288

5 Attorney for Plaintiff,
  ISEC, INC.

6

7

8 **UNITED STATES DISTRICT COURT**

9 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| 12 UNITED STATES FOR USE AND ) BENEFIT OF ISEC, INC., a Colorado ) corporation, ) | Case Number: |
| 13 | **COMPLAINT FOR:** |
| 14 Plaintiff, ) | 1. **BREACH OF CONTRACT;** |
| v. ) | 2. **CLAIM AGAINST MILLER ACT BOND;** |
| 15 ) | 3. **COMMON COUNTS.** |
| 16 DICK MORGANTI, a Joint Venture; DICK ) CORPORATION, a Pennsylvania ) corporation; THE MORGANTI GROUP, ) | |
| 17 INC., a Connecticut corporation; ) AMERICAN CASUALTY COMPANY OF ) | |
| 18 READING, PENNSYLVANIA, a ) Pennsylvania corporation; NATIONAL ) | |
| 19 UNION FIRE INSURANCE COMPANY OF ) PITTSBURGH, PA., a Pennsylvania ) | |
| 20 corporation; CONTINENTAL CASUALTY ) COMPANY, an Illinois corporation; and ) | |
| 21 DOES 1 through 10, ) | |
| 22 Defendants. ) | |

23

24     Plaintiff, ISEC, INC., complains and alleges as follows:

25 **GENERAL ALLEGATIONS**

26 **I. JURISDICTION/VENUE**

27     1.    Jurisdiction over this action is conferred on this Court by 40 U.S.C. Section 3133 in that

28 this matter involves a cause of action against a payment bond posted pursuant to the Miller Act.

1  2.  Venue in this action is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(2)

2 in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

3  3.  This action is timely under Title 40 USC 3133(b)(4), as it has been more than 90 days

4 since labor was last performed by Plaintiff and no payment has been made. It has been less that 1 year

5 since Plaintiff was last on the project.

6       **II. INTRA DISTRICT ASSIGNMENT**

7  4.  Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action should be assigned to the San

8 Francisco Division because the City and County of San Francisco is where a substantial part of the

9 events and/or omissions which gave rise to Plaintiff's claim occurred, and is further where the property

10 that is the subject of this action is situated.

11          **III. PARTIES**

12  5.  Plaintiff, ISEC, INC. (hereinafter "ISEC"), at all times herein mentioned is a Colorado

13 corporation, duly registered with the Secretary of State and with the Contractors State License Board

14 to do business and perform construction services in the State of California.

15  6.  Plaintiff is informed and believes and thereon alleges that Defendant

16 DICK/MORGANTI, (hereinafter "DICK/MORGANTI") is a joint venture consisting of Dick

17 Corporation and the Morganti Group, Inc., authorized to do and is doing business in the State of

18 California.

19  7..  Plaintiff is informed and believes that Defendant DICK CORPORATION ("DICK"),

20 is a Pennsylvania corporation, authorized to do business in the state of California.

21  8.  Plaintiff is informed and believes that Defendant THE MORGANTI GROUP, INC.

22 ("MORGANTI"), is a Connecticut corporation, authorized to do business in the state of California.

23  9.  Plaintiff is informed and believes that Defendant AMERICAN CASUALTY

24 COMPANY OF READING, PENNSYLVANIA ("AMERICAN"), is a Pennsylvania corporation,

25 authorized to transact surety business in the state of California.

26  10.  Plaintiff is informed and believes that Defendant NATIONAL UNION FIRE

27 INSURANCE COMPANY OF PITTSBURGH, PA. ("NATIONAL"), is a Pennsylvania corporation,

28 authorized to transact surety business in the state of California.

1      11.    Plaintiff is informed and believes that Defendant CONTINENTAL CASUALTY

2   COMPANY ("CONTINENTAL"), is an Illinois corporation, authorized to transact surety business in

3   the state of California.

4      12.    Plaintiff is unaware of the true names of Defendants Does 1 through 10, inclusive, and

5   therefore has sued them by the foregoing fictitious names. When said true names are discovered,

6   Plaintiff will seek leave to amend said Complaint to insert their true names in lieu of said fictitious

7   names.

8      13.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned

9   each of the Defendants herein were the agents, servants and employees of each of the remaining

10   Defendants and were at all times herein acting within the purposes and scope of such agency and

11   employment.

12                    **FIRST CAUSE OF ACTION**

13           **(FOR BREACH OF CONTRACT AGAINST DEFENDANTS**
               **DICK/MORGANTI, DICK, MORGANTI AND DOES 1 THROUGH 10)**

14

15      14.    Plaintiff incorporates by reference and realleges same as if fully set forth herein each

   and every allegation contained in Paragraphs 1 through 13, inclusive, of Plaintiff's complaint herein.

16

17      15.    On or about May 6, 2002 Defendants DICK/MORGANTI, DICK, and MORGANTI

   were awarded a joint venture contract by the United States General Services Administration known as

18

19   GSA Contract No. GS-09P-02-KTC-0002, for certain work of improvement consisting of the

   construction of the new GSA Federal Building located on the corner of 7th and Mission Streets in San

20

21   Francisco, California (hereinafter the "Project").

22      16.    On or about August 22, 2003, Plaintiff ISEC as a contractor, entered into an agreement

   (hereinafter the "Contract" attached hereto as Exhibit "A") with Defendant DICK/MORGANTI and

23

24   Does 1 through 10, whereby Plaintiff ISEC agreed to provide millwork and architectural interior sheet

   metal, and each of them, promised to pay for certain work to be provided at the Project.

25

26      17.    Plaintiff has fully performed all of the conditions of said agreement to be performed on

   its part, except those conditions the performance of which have been excused by Defendants, and each

27

28   of them; and that all of said labor and materials were furnished to be used and the same were actually

1  used in, upon, for and about the construction of the public work as aforesaid.

2       18.   Although demand has been made therefore, Defendants, and each of them, have failed,

3  neglected and refused to pay said sum of $480,249.87 plus interest, attorneys' fees and costs.

4               **SECOND CAUSE OF ACTION**

5            **(CLAIM AGAINST MILLER ACT BOND AGAINST**

    **DICK/MORGANTI, DICK, MORGANTI, AMERICAN, NATIONAL, CONTINENTAL and**

6             **DOES 1 through 5 and DOES 6 through 10)**

7       19.   Plaintiff incorporates by reference and realleges same as if fully set forth herein, each

8  and every allegation contained in Paragraphs 1 through 18, inclusive of Plaintiff's Complaint herein.

9       20.   DICK/MORGANTI and the United States General Services Administration entered into

10  a contract for the new construction of work described as GSA Federal Building, located at San

11  Francisco, California.

12      21.   In conjunction with the award of the contract by the United States General Services

13  Administration to DICK/MORGANTI, on or about August 13, 2002, DICK/MORGANTI as principal,

14  and AMERICAN and DOES 6 through 10, as surety, executed and delivered a Bond (described as

15  Bond #929256521, #92964499), pursuant to 40 U.S.C. Sections 3131-3134 (The Miller Act),

16  guaranteeing payment to all persons supplying labor and materials in the prosecution of the contract

17  between the United States General Services Administration and DICK/MORGANTI (attached hereto

18  as Exhibit "B").

19      22.   In conjunction with the award of the contract by the United States General Services

20  Administration to DICK/MORGANTI, on or about August 13, 2002, DICK/MORGANTI as principal,

21  and NATIONAL and DOES 6 through 10, as surety, executed and delivered a Bond (described as Bond

22  #260161), pursuant to 40 U.S.C. Sections 3131-3134 (The Miller Act), guaranteeing payment to all

23  persons supplying labor and materials in the prosecution of the contract between the United States

24  General Services Administration and DICK/MORGANTI (attached hereto as Exhibit "B").

25      23.   On or about March 6, 2003, DICK/MORGANTI purchased a rider from AMERICAN,

26  NATIONAL, and CONTINENTAL increasing the penal sum of the Miller Act payment bonds from

27  $3,600,000.00 to $137,426,918.00 (attached hereto as Exhibit "C").

28      24.   Thereafter, and during the prosecution of the contract between the United States General

-4-

**COMPLAINT**

1   Services Administration and DICK/MORGANTI, DICK MORGANTI entered into a subcontract with

2   ISEC, which provided that ISEC would perform a portion of the work required to be performed by

3   DICK/MORGANTI pursuant to the contract between DICK/MORGANTI and the United States

4   General Services Administration.

5        25.    Thereafter, ISEC performed the work, and supplied the materials, supplies, equipment

6   and labor required of it pursuant to the terms of the subcontract with DICK/MORGANTI regarding the

7   project.

8        26.    The materials, supplies, equipment, and labor furnished by ISEC, giving credit for

9   payments already remitted by DICK/MORGANTI, were and are reasonably worth the principal sum

10  of $480,249.87.

11       27.    Plaintiff has not been paid in full as stated above; more than 90 days, but less than one

12  year, have passed since the date on which Plaintiff last furnished materials, supplies and equipment;

13  and the principal balance due, owing, and unpaid at the time of the commencement of this action is

14  $480,249.87.

15                              **THIRD CAUSE OF ACTION**

16            **(FOR COMMON COUNTS AGAINST DEFENDANT DICK/MORGANTI, DICK,
                          MORGANTI AND DOES 1 THROUGH 10)**

17

18       28.    Plaintiff incorporates by reference and realleges same as if fully set forth herein, each

19  and every allegation contained in paragraphs 1 through 27 inclusive of Plaintiff's Complaint herein.

20       29.    Within the last year, in the above-entitled County, Plaintiff provided materials,

21  equipment and labor to Defendants and DOES 1 through 10 and each of them, at their instance and

22  request, and defendants became indebted to Plaintiff upon an open book account, for certain materials,

23  equipment and labor at Defendants' special instance totaling $480,249.87.

24       30.    No part of said sum has been paid, although demand therefore has been made, and there

25  is now due, owing and unpaid to Plaintiff on said open book account the sum of $480,249.87, together

26  with interest thereon, pursuant to the contract between the parties, from the date of Defendant's breach

27  through the date of judgment.

28       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

**COMPLAINT**

## FIRST CAUSE OF ACTION

### (AGAINST DEFENDANT DICK/MORGANTI, DICK, MORGANTI AND DOES 1 THROUGH 10, INCLUSIVE)

1. For damages in the sum of $480,249.87;

2. For interest on the sum of $480,249.87, from the date of Defendant's breach through the date of judgment;

3. For reasonable attorneys' fees as determined by the Court at the time of trial;

## SECOND CAUSE OF ACTION

### (AGAINST DEFENDANTS DICK/MORGANTI, DICK, MORGANTI, AMERICAN, NATIONAL, CONTINENTAL AND DOES 1-5 AND 6-10)

4. For damages in the sum of $480,249.87;

5. For interest on the sum of $480,249.87, from the date of Defendant's breach through the date of judgment;

6. For reasonable attorney fees as determined by the Court at the time of trial.

## THIRD CAUSE OF ACTION

### (AGAINST DEFENDANTS DICK/MORGANTI, DICK, MORGANTI AND DOES 1 THROUGH 10)

7. For damages in the sum of $480,249.87;

8. For interest on the sum of $480,249.87, from the date of Defendant's breach through the date of judgment;

9. For reasonable attorney fees as determined by the Court at the time of trial.

## ON ALL CAUSES OF ACTION

10. For costs of suit herein; and

11. For such other and further relief as the Court may deem proper.

DATED: April 9, 2008                    **MUZI & ASSOCIATES**

BY: _____
ANDREW C. MUZI, ESQ.
Attorneys for Plaintiffs
ISEC, INC.

EXHIBIT "A"

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made this 22nd day of August, 2003, by and between ISEC, Incorporated, 41734 Christy Street, Fremont, CA, 94538, Phone 510-490-1333, Fax 510-656-8764, ATTN: Mike Polanchyck, hereinafter called the Subcontractor and Dick / Morganti, Joint Venture 1068 Mission Street, San Francisco, CA  94103, Attention: Thomas J. DeMarco, Phone: 415-522-1320, Fax: 415-522-1366 hereinafter called the Contractor.

For the consideration hereinafter named, the said Subcontractor covenants and agrees with the said Contractor as follows, to wit:

FIRST: This Subcontractor agrees to furnish all the necessary supervision, labor, tools, materials, services, equipment, machinery, consumables, expendables, and other items proper and/or necessary in doing the Millwork and Architectural Interior Sheet Metal, as required for the GSA Federal Building Project, located in San Francisco, CA, being constructed by Dick / Morganti, Joint Venture (Contractor) for GSA - General Services Administration (Owner) pursuant to the terms and conditions of the General Contract between Owner and Contractor and the terms stated herein

## A.    SCOPE OF WORK

It is understood and agreed that this Subcontractor's Scope of Work (hereinafter referred to as Work) includes, but is not limited to the following:

Subcontractor agrees to supply and install all materials as required to provide a complete product as described in or reasonably inferable from the Contract Documents and in accordance with, but not limited by, the following sections of the specifications:

| | |
|---|---|
| Division 1 | General Requirements |
| *Division 2 | Site Construction |
| *Division 3 | Concrete |
| *Division 5 | Metals |
| *05590 | Sheet Metal Fabrications |
| 05700 | Ornamental Metal |
| *Division 6 | Wood & Plastics |
| 06400 | Architectural Woodwork |
| 06414 | Modular Wood Casework |
| *06630 | Glass Fiber Reinforced Fabrications |
| *Division 7 | Thermal & Moisture Protection |
| *Division 8 | Doors and Windows |
| *Division 9 | Finishes |
| *Division 10 | Specialties |
| *Division 11 | Equipment |
| *Division 12 | Furnishings |
| *Division 14 | Conveying Systems |
| *Division 15 | Mechanical |
| Division 16 | Electrical |

*= As applicable to this scope of work only.

This Subcontractor agrees to furnish all Millwork and Architectural Interior Sheet Metal in strict accordance with Specification Sections above and 01110 through 01820, subject to exclusions noted herein

The lump sum amount of this subcontract agreement specifically includes, but is not limited to, the following:

1.    It is specifically understood that any and all costs associated with the scope additions/revisions included with the issuance of the "Final Construction Documents", dated 02/14/2003, are included in the lump sum amount of this Subcontract.

2.    It is specifically understood that this Subcontractor shall furnish a crane, operating engineer, and any other equipment required for the hoisting and movement of this Subcontractor's material. Contractor will provide a personnel hoist, (size not guaranteed), for use of all trades when the structure of the building is past three floors. This Subcontractor may use this equipment, upon 48-hour prior request and approval by Dick/Morganti's superintendent, provided that all loads are within the hoist's capacity for size and weight. The Subcontractor recognizes that the Contractor's hoist is a piece of machinery that is subject to occasional failure and, therefore, the Subcontractor assumes any impacts due to the unscheduled

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-05-KTC-0062
GSA Project No. NCA00043
COST CODE:  664000
1 of 35

shutdown of the equipment. The Contractor will not acknowledge or accept any claims for stand-by time, productivity loss, etc.. due to the equipment failure. The Subcontractor shall pay all costs incurred by the Contractor for operation of the man/material hoist during premium time hours for the Subcontractors sole benefit. The personnel hoist will be installed in two phases. Phase one installation will occur up to the fourth floor, at such time as the structure is ready to accept the hoist. Phase two installation will include the remainder above, at such time, as the structure is ready to accept the hoist. The Subcontractor shall provide all out-of-sequence labor, material and special connections, if any, required remobilizing and completing his work at the personnel hoist bay when the personnel hoist bay is removed.

3.      This Subcontractor is responsible to Furnish and install all Millwork and Architectural Interior Sheet Metal, including all necessary labor, materials, tools, equipment, plant supervision, etc. and pay all applicable taxes and fees required. This Subcontractor has included all necessary work based upon his understanding on the intent of the Documents, his experience in completing projects of similar size and complexity, and analysis of similar areas in the building where the work is better defined. This Subcontractor has included all items proper, necessary and required regardless of whether or not such work is indicated by the Drawings, with the exception of clear changes in scope.

4.      Subcontractor agrees that the total mark-up rate (Overhead and Profit) allowed for all change orders will be ten (10) percent. This rate shall be applied to the total negotiated direct costs of any modification.

5.      Performance and Payment Bonds.

6.      Nothing listed above is meant to limit the scope of this Subcontract Agreement in any way. It is clearly understood that the lump sum amount of this Subcontract Agreement includes all Millwork and Architectural Interior Sheet Metal required for this project.

7.      Interior sheet metal column covers with framing at Annex.

8.      Galvanized cladding in lobby 01100.

9.      Stainless steel cladding at elevator lobbies and main lobby including Masonite backing and straps, plates, brackets and angles required for support.

10.     Metal brackets required supporting counters supplied by this Subcontract.

11.     Stainless steel coping shown in details 9 & 10 on drawing I-700.

12.     Aluminum wall base.

13.     Rolling gate at Lobby.

14.     Stainless steel countertops at Lobby Reception Desk and other locations as indicated.

15.     Steel counter and cabinets in Security Area T0082.

16.     Video wall.

17.     Perforated galvanized steel benches.

18.     Casework and tops in room T0072 Mech. Shop.

19.     All boxes, clamps, hangers, etc. scheduled to be fastened to structural and/or miscellaneous steel that is to have sprayed-on fireproofing (SOFF) applied shall be installed and protected prior to SOFP application. Any patching of SOFP due to the untimely installation of this Subcontractors work shall be the responsibility of this Subcontractor.

20.     Plastic laminated counter and shelving in Security room 01099.

21.     Stainless steel enclosures show similar in details 17/18/19/20 & 28 on drawing A-861.

22.     Stainless steel door headers where shown.

23.     Finishing, final sanding, puttying of nail holes, and caulking of architectural woodwork for transparent finished material.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCAG0049
COST CODE:  064800

24.     Finish carpentry items.

25.     Wood paneling with factory applied transparent finish.

26.     Custom wood casework with factory applied transparent finish and related accessories.

27.     Not used

28.     Miscellaneous plastic laminate items.

29.     Provision of glass and glazing related to architectural woodwork items.

30.     Provision of architectural woodwork hardware and accessories.

31.     Surrounds, coffee areas, fitness facility, information desk, lobby/security desk, lounge work room, public reception desk.

32.     Plastic Laminated Modular Casework with related tops.

33.     Pl 5 Shelf Unit in rooms D0107 and T0057.

34.     All casework and counter tops in Daycare Area.

35.     PL cleat and rod shelving.

36.     Wood veneer paneling in room T0136.

37.     Wood shelving at Lobby T0138.

38.     Wood casework and related tops at conference rooms

39.     PL Lockers and benches at childcare center.

40.     Not Used

41.     "AA" grade wood paneling at cabins.

42.     Perforated plywood at walls shown on drawing A-492.

43.     Install Lanterns per specification section 06630 as an option.

44.     Wood bench at entry T0135.

45.     Wood bench at fitness T0012.

46.     Casework and tops in Kitchen D0116.

47.     Casework and tops in Health Suite area drawing A-550.

48.     Install including fasteners fiberglass / steel light lanterns per specification section 06630 including: unloading and distributing, templating and layout, drilling and epoxy for anchors, hoisting and rigging into place for attachment, fastening of FRP cover if shipped separately and floor protection. Does not include: seismic and structural calculations, adequacy of the structural members and / or backing for attachment, structural integrity of the lanterns for deflection and tolerances, responsibility of design, materials, contractibility and quality in accordance with plans, specification and local, state and federal building codes. ISEC will assist in mitigating the costs to Dick / Morganti for seismic and structural calculations and adequacy of the structural members and / or backing for attachment.

49.     Upholstered bench 37 / A-533.

50.     Contract sum includes acceptance of Option 4, PS15, delete wood trim. Deduct 2,597.5 sf at $53.84 = ($139,849.00)

51.     Contract sum includes acceptance of Option 8, PS15, delete aluminum base. Deduct 7,765 lf at $13.37 = ($111,583.00).

**B.     WORK BY OTHERS**

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00048
COST CODE: 064000

3 of 35

1. Cubby storage units childcare center. (NIC)

2. In wall backing.

3. Light pole at plaza.

4. Galvanized soffit panels at Annex detail 7/A-864 and typical.

5. Exterior galvanized material.

6. All woodwork inside of elevator cabs.

7. Mail lock boxes in room T0080.

8. Perforated Plywood Paneling at ceilings.

9. All Courtroom Woodwork.

10. Metal Lockers at A-496.

11. Lockable sliding pocket doors.

12. Rough carpentry, i.e. wood blocking, framing, shims, cants, gypsum boards, nailers, furring strips, plywood, studs.

13. Sinks and trims.

14. Hollow metal doors, frames and finish hardware.

C.    **SPECIAL CONDITIONS**

1.    The Subcontractor shall bear all risk, costs and expense incurred in dealing with any adverse physical conditions and artificial obstructions whether foreseeable or not at the time of execution of this Agreement, provided that:

   a.    No hazardous wastes or toxic material exists onsite
   b.    No unknown archaeological conditions are encountered

   Subcontractor has the obligation to notify the Contractor of any such conditions and obstructions encountered in due course, especially if such findings could or would affect the execution of other project works.

2.    Hazardous Substances. Subcontractor will take all measures necessary to prevent the release of any Hazardous Substances at the Facility Site or adjacent areas. Subcontractor will immediately notify Contractor of any spills, emissions or other releases of Hazardous Substances that occur in connection with the performance of the Work. Subcontractor will be responsible for removing from the Facility Site and areas adjacent thereto, and for properly disposing of, in a manner acceptable to Contractor and in compliance with the Contract Documents, all Applicable Laws and Applicable Permits, all Hazardous Substances generated, released or accumulated by Subcontractor or any Sub-Subcontractor in the course of performing the Work and that did not exist on the Facility Site prior to the date of the Agreement. In the event Subcontractor encounters on the Facility Site material reasonably believed to be a pre-existing Hazardous Substance, then Subcontractor will immediately cease performance of any Work in the area affected and report the condition to Contractor in writing. Subcontractor will not thereafter resume performance of the Work in the affected area except with the prior written permission of Contractor.

3.    Environmental Matters.

   a.    Left Blank.

   b.    Pre-Existing Hazardous Substances. To the extent that any excavated or disturbed Hazardous Substances are determined to be solid waste, hazardous waste, hazardous debris, or contaminated media under Applicable Law, the Owner shall be considered the generator of such waste under Applicable Law rather than Contractor or Subcontractor, and Owner agrees to be identified as such on any bill of lading, manifest or other documentation required under Applicable Law to be completed in order to transport or dispose of the Hazardous Substance. Furthermore, the Owner, rather than the Contractor or Subcontractor, will be solely responsible for

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 064000

4 of 25

compliance with any other obligation imposed by Applicable Law upon the generator of such waste or the owner or operator of a solid waste management facility.

    c.    <u>Management of Pre-Existing Hazardous Substances.</u> In the event that Subcontractor encounters soil, sediments, debris or subsurface material at the Facility Site which the Subcontractor reasonably believes contains Hazardous Substances that existed at the Facility Site prior to the date of the Agreement, the Subcontractor may report the condition to Contractor and cease performance of any Work if the Subcontractor reasonably believes that it is necessary in order to comply with the Project Safety Manual or Applicable Law. Subcontractor will not thereafter resume performance of the Work in the affected area except with the prior written permission of the Contractor.

4.    This Subcontractor will procure the contractor licenses from local agencies applicable to this Subcontractor's Scope of Work and as required to be able to work on this project.

5.    This Subcontractor acknowledges that its prices were based on the drawings, specifications, information and documents provided and this Subcontractor's own experience. This Subcontractor agrees that the prices in this Subcontract Agreement are applicable to the performance of any and all the Work called for in this Subcontract Agreement and as required for this Project.

6.    This Subcontractor acknowledges that he is solely responsible for the productivity of its work force, man-hours required to complete the Work and the effort required to meet the Project schedule.

7.    This Subcontractor acknowledges that it may work periodic overtime at its discretion and cost.

8.    This Subcontractor shall commence work on site within 7 days following Notice to Proceed from Contractor and shall pursue the work without any interruption until fully completed.

9.    On site parking is not available. The subcontractor is responsible for employee and sub-subcontractor parking offsite.

10.    Nothing listed above is meant to limit the scope of this Subcontract Agreement in any way. It is clearly understood that the lump sum amount of this Subcontract Agreement includes all of the work necessary to complete, in accordance with the contract documents, all work as defined in Scope of Work for this project.

11.    This Subcontractor agrees to perform the work as necessary in order to satisfy the scheduling requirements of this project as set forth in the General Contract.

12.    All priming, painting or touch-up required as a result of installation activities performed by this Subcontractor will be the sole responsibility of this Subcontractor.

13.    Materials used, products supplied and quality of workmanship must be in strict conformance with the specifications and acceptable to the Engineer/Owner/Architect.

14.    This Subcontractor will be required to furnish necessary drawings, submittals, samples, manuals and data required by the specifications in a timely manner in order not to delay the progress of the job. Submittals shall all be submitted in accordance with Section 01330 for approval within six (6) weeks (or sooner as applicable, in accordance with the project schedule), of the date of execution of this subcontract agreement unless otherwise authorized, in writing, by the General Contractor.

15.    A record set of drawings shall be kept at the jobsite, and marked current with as-built conditions, to be turned over to the Contractor at work completion. The drawings must be legible, reproducible, and as required by Section 01781.

16.    This agreement includes all documentation and personnel required to satisfy the quality control and testing requirements set forth in the respective specifications (except as specifically provided by others).

17.    Hoisting of equipment and materials scheduled to be furnished by this Subcontractor shall be the responsibility of this Subcontractor. See section A Scope of Work for use of Contractors Man/Material Hoist and Cranes.

FOR THE PROJECT KNOWN AS:

    GSA Federal Building, San Francisco
    Subcontract Number 31058-127
    GSA Contract No. GS-09P-02-KTC-0002
    GSA Project No. NCA00043
    COST CODE:  064000

18.    It is specifically understood this Subcontractor shall cooperate with the testing laboratory utilized by the Contractor and Owner. Retesting costs incurred by the Testing Lab due to deficient work performed by this Subcontractor shall be borne by this Subcontractor.

19.    All required certifications shall be furnished by this Subcontractor. This agreement includes all documentation and personnel required to satisfy the quality control requirements set forth in specifications. This includes any testing or inspection by an approved independent testing laboratory, agency or professional engineer registered in California if required by the contract documents.

20.    Provisions required by the Buy American Act are specifically included in this Subcontract Agreement.

21.    This Subcontract includes all required mobilizations and demobilizations necessary to complete the work.

22.    It is understood that time is of the essence for this project. The Subcontractor has reviewed the project schedule and work activities specific for this Subcontractor's scope of work with the understanding he shall meet the dates indicated or complete work prior to those dates specified for the Subcontractor's scope of work.

23.    It is also understood that this Subcontractor will perform his Scope of Work in accordance with the sequencing of the project schedule. If preceding sequences complete earlier than anticipated, this Subcontractor may be requested to accelerate the start of their scheduled work activities and proceed at the anticipated schedule duration of the work activity with the understanding this acceleration is not over and above the intent of this Subcontract Agreement.

24.    This Subcontractor must supply for his own use the following if required:

- Field Office and/or storage and tool trailer.
- Temporary utilities including telephone service as required.
- Drinking water and ice.
- Hoisting equipment for materials/manpower.
- Safety and barricades
- Layout from benchmarks and control lines provided by the contractor
- All scaffolding, high lifts, ladders, etc.

25.    The Owner has the right to approve or disapprove the employment of this Subcontractor. In the event that the Owner does not approve this Subcontractor, this Subcontract shall become null and void. The Contractor reserves the right to approve or disapprove the Subcontractor's personnel.

26.    This Subcontractor will be responsible to complete all punch list items within the time limits established by the Contractor.

27.    The Contract Documents, Section "F", Article No. 2, contain provisions for the assessment of liquidated damages. Should such damages be assessed by the Owner as a result of this Subcontractor's failure to timely perform, this Subcontractor shall be accordingly liable for such damages, if assessed

28.    It is specifically agreed that this Subcontractor shall provide all inserts, anchors, clips, and all other such fastening devices necessary to complete installation of the work included as part of the scope of this Subcontract Agreement.

29.    It is specifically understood that this Subcontractor will provide all warranties, owner's manuals, and owner training, and testing as required by the Contract Documents.

30.    It is specifically understood that this Subcontractor will provide and install all cutting, patching, core drilling, inserts, sleeves, etc., as required to provide a complete installation of the work included herein.

31.    The lump sum amount of this Subcontract Agreement indicated below shall be firm for the duration of the project and is not subject to any escalation for material or labor.

32.    This Subcontractor shall discuss the means and methods to be utilized in all operations with the Contractor's Superintendent prior to commencement of any work.

33.    This Subcontractor shall coordinate his work with the work of other subcontractors and suppliers.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. WCA00049
CDSF CODE: 064000

34.    This Subcontractor is responsible for the shipment and receiving of all materials
       associated with the work as included as part of this Subcontract agreement and
       furthermore will be responsible for the protection and safe keeping of this material
       until final acceptance by the Owner. Due to limited access to the building, all
       deliveries must be coordinated with Dick/Morganti's Project Superintendent.
       Notice must be given 48 hours in advance and access will be on a first-come, first-
       served basis. It is specifically understood that this Subcontractor is responsible
       for all hoisting, equipment and manpower for hoisting, required for the work
       included as part of this subcontract agreement. See section A Scope of Work for
       use of Contractors Man/Material Hoist and Cranes.

35.    It is specifically understood this project is governed by the wage rates associated
       with the "General Decision CA010029" as indicated in the Contract Documents.

36.    In accordance with the requirements of the Contract Documents, this
       Subcontractor shall submit weekly certified payrolls, failure to provide this
       information will affect the approval of payment requisitions.

37.    It is specifically understood that the lump sum value of this Subcontract includes
       any applicable sales and use taxes.

38.    This Subcontractor is responsible for cleaning the streets of any mud or debris
       deposited by vehicles associated with the work performed under this Subcontract
       Agreement.

39.    This Subcontractor must remove and replace any temporary handrail as needed to
       complete the work included in this Subcontract agreement.

40.    This Subcontractor shall provide and fulfill the insurance requirements required by
       Dick/Morganti. This Subcontractor shall include Dick/Morganti, the Dick Corporation,
       the Morganti Group, the Owner, Construction Manager, and the Architect as
       additional insured at no additional cost

41.    This Subcontractor shall provide all information required for Applications for
       Payment prior to submitting the first Pay Request and within four (4) weeks from the
       date of this Agreement.

42.    All daily reports, certified payrolls, accident reporting, written notifications,
       inspections notifications, etc. shall be provided by this Subcontractor as required by
       the Contract Documents. Written notifications shall be provided to the Contractor in
       sufficient time for the Contractor to forward such notifications to the Owner in
       compliance with the time requirements set forth in the Contract Documents.

43.    This Subcontractor shall, without additional expenses to Dick/Morganti, be
       responsible for obtaining any necessary licenses, fees and permits, and for
       complying with any Federal, State, and municipal laws, codes, and regulations
       applicable to the performance of the work. The Subcontractor shall also be
       responsible for all damages to persons or property that occur as a result of the
       Subcontractor's fault or negligence and shall ensure proper safety and health
       precautions to protect the work, the workers, the public, and property of others.

44.    All applicable OSHA AND/OR CAL/OSHA standards must be strictly adhered to and
       any citations or subsequent penalties that are a result of noncompliance of these
       standards shall be the responsibility of this Subcontractor.

45.    It is specifically understood this Subcontractor has a complete understanding of the
       work required by this Subcontract and any problem areas, uncertainties,
       discrepancies, dimensions, etc. have been verified.

46.    All necessary cleaning, protection and/or repairs to in-place work damaged by this
       Subcontractor during the handling, transportation, placing, erection, and installation
       of all items covered under this Agreement shall be the responsibility of this
       Subcontractor.

47.    It is specifically understood the Contractor will enforce strict jobsite cleanliness and
       this Subcontractor shall be responsible for daily clean up of trash created under this
       Scope of Work. The trash shall be deposited in the appropriate dumpsters provided
       by the Contractor. Debris not acceptable to the trash hauling service (excess
       concrete, rebar, etc.) shall be disposed of by this Subcontractor by his own means

48.    It is specifically understood that this Subcontractor will be required to participate in
       the site-recycling program as required by the contract documents. This is to help

FOR THE PROJECT KNOWN AS:

                    GSA Federal Building, San Francisco
                      Subcontract Number 31058-137
                GSA Contract No. GS-09P-02-KTC-0002
                    GSA Project No. NCA00049
                       COST CODE: 064000

                              7 of 25

04/11/2008  10:59    19495 88    MUZI ASSOCIAT

divert excess waste from landfill's to recycling centers. This Subcontractor will be required to separate its construction debris and dispose of the debris in the proper receptacles. These receptacles will be clearly marked and will be located on the jobsite.

49.    This Subcontractor agrees to fully execute and return this Subcontract Agreement within ten (10) working days after receiving it. Or at a minimum, providing written indication of any objections to the provisions included herein within ten (10) working days. A current insurance certificate indicating the coverage required herein must also be received prior to commencing work on site.

50.    It is specifically understood itemized labor and material quotations and Change Orders shall be prepared and submitted by this Subcontractor in accordance with the contract documents. This Subcontractor shall submit pricing for all proposed Change Orders within ten (10) working days. This Subcontractor agrees that the total mark-up rate (Overhead and Profit) allowed for all change orders will be ten (10) percent. This rate shall be applied to the total negotiated direct costs of any modification.

51.    It is specifically understood that this Subcontractor will provide a Performance bond and a labor and material payment bond each in the amount of the contract value. The costs of these bonds are included in the lump sum amount of this Subcontract agreement.

52.    It is specifically understood that the lump sum amount of this Subcontract agreement includes all items and services needed to provide a complete scope of work for the Millwork and Architectural Interior Sheet Metal. This includes all items and services needed to fully construct this scope of work as contemplated by the drawings and specifications but not necessarily fully described. The amount of this Subcontract includes everything needed to construct the Millwork and Architectural Interior Sheet Metal with the exception of changes in scope.

53.    Task lighting, in addition to that provided per specification 01500 – Temporary Facilities and Controls, shall be the responsibility of each subcontractor.

54.    It is specifically understood this Subcontractor shall use Saturdays as make-up days to compensate for normal work days lost during the week due to inclement weather, i.e., rain, winds, heat, etc .

55.    The Contractor will provide this Subcontractor upon request, one complete set of Contract Documents between the Contractor and the Owner and one Compact Disk.

## D.    SUBCONTRACT PRICE

1.  For the successful completion of all Work required by this Subcontract Agreement, the Contractor shall pay to Subcontractor the lump sum amount of THREE MILLION THREE HUNDRED ELEVEN THOUSAND FOUR HUNDRED NINETEEN Dollars ($3,311,419.00) hereafter referred to as the Subcontract Price.

Except as otherwise provided below, Subcontractor shall administer and pay all sales, use, import, gross receipts, income, duties and withholding taxes and other taxes and contributions imposed by any taxing authority upon the sale, purchase, transportation or use of materials, supplies, equipment, services or labor to be incorporated in the Facility, including without limitation, taxes on or measured by Subcontractor's receipts hereunder and taxes on or measured by wages earned by employees of Subcontractor (the "Taxes"), and shall furnish to the appropriate taxing authorities all required information and reports in connection with such Taxes.

Option Pricing:

1.  Any work in addition to the aforementioned requested by the Contractor and performed by this Subcontractor shall be priced per the schedule of rates that Subcontractor shall submit within five (5) days of execution of this Subcontract Agreement

2.  The Subcontract Price listed above is inclusive of all costs to perform the Scope of Work as described in this Subcontract Agreement including but not limited to: costs for all labor, supervision, benefits, payroll taxes, equipment, materials, mobilization of equipment and materials, de-mobilization of equipment and materials, fuels, oil, consumables, expendables, tools of the trade, G&A costs, insurances, home office overheads, jobsite overheads, margin and profit.

3.  The Subcontract Price is firm for the duration of the Work and not subject to escalation.

FOR THIS PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GB-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE:  066000

B of 25



4.   All costs incurred by Subcontractor in excess of the Subcontractor Price necessary to complete the Work shall be the sole responsibility of this Subcontractor.

**E.   INVOICE / PAYMENT TERMS**

1.   The invoice is due on or about, but no later than the 25th of each month. Payment will be made following receipt of an approved invoice and all required information, and then in accordance with the following time periods:

   a.   Ten (10) days following receipt of corresponding payment from the Owner

2.   In the event payment has not been received from the Owner due to the fault of Subcontractor, the Contractor will withhold payment of the applicable installment until such time as the payment has been received from the Owner.

3.   Payment Provisions

   a.   The Work described in Article A.1 shall be paid based upon a Subcontractor developed detailed schedule of values which shall be approved by the Contractor. This Work shall be paid per the detailed schedule of values and based on actual progress as determined by Contractor's Project Manager.
   b.   Zero (0%) percent shall be withheld from each payment as retention.
   c.   Each application for payment hereunder shall be submitted using the Attachments enclosed and shall be accompanied by a certification from Seller that the work covered by the application for payment has been completed and effected in accordance with the design drawings and specification and has progressed to the point indicated on the invoice.
   d.   The invoice original and all required attachments shall be sent to:

   Dick / Morganti Joint Venture
   Attention:  Accounting Job No. 21058
   1900 State Route 51
   Large, PA  15025

   A copy of the invoice and all required attachments shall be sent to:

   Dick / Morganti, Joint Venture
   Attention:  Thomas J. DeMarco, Senior Project Manager
   1068 Mission Street
   San Francisco, CA  94103

   e.   Final Payment

      1.   Following completion of the Work and Final Acceptance including completion of (a) all Work required by this Subcontract Agreement and, (b) satisfactory completion of all punch list items and, (c) receipt by Contractor of all required as-construction drawings and, (d) removal from the Project Site of all Subcontractors tools, equipment and debris and, (e) receipt by Contractor of all required releases and, (f) release of retainage for this work by Owner, the Contractor shall release the final payment including all retention to this Subcontractor.

**F.   FINAL ACCEPTANCE.**

1.   This Subcontractor shall perform and have completed the whole of the Work on the Project in accordance with this Subcontract no later than as shown in the agreed to project schedule.

**G.   GENERAL CONDITIONS**

1.   Participate in, provide and update Daily Reports, as required by Contractor and herein.
2.   This Subcontractor is aware of the local labor conditions and will comply with the requirements of any applicable local union agreements.
3.   This Subcontractor will comply with the rules established by Contractor for the Project and the Facility.
4.   It is this Subcontractor's responsibility to protect its work and equipment until accepted by the Contractor.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-117
GSA Contract No. GS-09P-01-KTC-0002
GSA Project No. WCA00043
COST CODE:  064000

9 of 25

5.  It is the Subcontractor's responsibility to protect the Project Site, surrounding properties existing installations and existing road surfaces from damage. This Subcontractor will be responsible for repairs resulting from such damage. Subcontractor shall abide by the rules established regarding public roads designated for use or closed for use to Project traffic and deliveries.

6.  This Subcontractor shall provide any temporary and construction utilities (i.e., compressed air, task lighting, etc.) as required to perform the Work.

7.  Contractor will provide subcontractor with access and egress to the site.

8.  This Subcontractor shall provide his own telephone, FAX and photocopy services and the cost of same is included in the Subcontract Price.

9.  This Subcontractor agrees to provide access to its Work as requested by the Contractor and the Owner for observations, inspections and to perform tests as required to accept the Work through its various stages.

10. Limited security may be provided at the Facility and work area. This Subcontractor shall comply with the rules for site security developed by the Contractor. The Contractor and Owner shall at no time and in any regard be responsible for any losses that this Subcontractor, or its employees or Sub-Subcontractors, may incur as a result of the quality of the site security or lack thereof.

11. This Subcontractor shall perform continual, daily clean up of all its work areas and those of its Subcontractors. Trash shall not be allowed to accumulate. Any hazardous or abnormal waste generated by this Subcontractor shall be handled and properly disposed of by this Subcontractor.

12. This Subcontractor shall submit, for the Contractor's written approval, its plan for subcontracting any work prior to the issuance of a Subcontract from this Subcontractor.

13. Included in this Subcontract Agreement by this reference are the soils reports listed here below. This Subcontractor is hereby aware of the existing conditions and has self-determined the impact on the cost of its work, health and safety of its employees and is subsequently fully responsible for the health and safety of its employees.

> Subsurface Environmental Investigations Report dated February 14, 1997 as prepared by Treadwell & Rollo, Inc. / Olivia Chen Consultants (T&R/OCC).
> Geotech Report dated February 1998 as prepared by Geomatrix Consultants (Geomatrix).
>
> Geotech Report dated November 2001 as prepared by Geomatrix Consultants, Inc (Geomatrix).

14. This Subcontractor and all Sub-Subcontractors shall provide the insurance coverages required and name, on each certificate, the following as additional insured and all their assignees, subsidiaries and affiliates and cause insurers to waive all rights of subrogation against each of the following and all their assignees, subsidiaries and affiliates.

| | |
|---|---|
| Owner: | General Services Administration, United States of America |
| Contractor: | Dick / Morganti, Joint Venture, & Dick Corporation, & Morganti Texas, Inc. |
| Const. Manager: | Hunt Construction Group, Inc. |
| Architect: | Smith Group, Inc. |

15. Quality Program. Subcontractor shall submit for approval by Contractor a quality program describing the organization, including on-site organization, procedures, systems and methods and the like that Subcontractor shall employ on the site to insure a quality performance of the Work.

16. Daily Reports. Subcontractor shall provide a daily report as required by the Contractor. The report shall include equipment and employees on site for the reporting period in a format acceptable to both the Contractor and the Owner.

17. Weekly Employee Reports.    Subcontractor shall report weekly to Contractor the number of Subcontractor employees and Sub-subcontractor employees including management and tradesmen. Report shall include all information as required by the Owner.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 2105H-137
GSA Contract No. GS-09P-02-KTC-0062
GSA Project No. NCA00069
COST CODE:  064000

10 of 25

18.  Certified Payroll reports. Subcontractor shall provide certified payroll reports on a weekly basis for submission to Owner. Reports shall include information as required and be in a format acceptable to Owner.

19.  It is specifically understood that the lump sum amount of this Subcontract agreement includes all items and services needed to provide a complete scope of work for the supply and install of Millwork and Architectural Interior Sheet Metal. This includes all items and services needed to fully construct this scope of work as contemplated by the drawings and specifications but not necessarily fully described. The amount of this Subcontract includes everything needed to complete the scope of work as defined in this Subcontract and the Contract Documents with the exception of changes in scope.

20.  It is specifically understood that any and all costs associated with the scope additions/revisions included with the issuance of the "Final Construction Documents", are included in the lump sum amount of this Subcontract.

21.  This Subcontractor hereby acknowledges that the lump sum price is based upon incomplete documents and that this Subcontractor has included the costs for work not fully defined or illustrated by the Contract Documents. This Subcontractor has included all necessary work based upon his understanding of the intent of the Documents, his experience in completing projects of similar size and complexity, and analysis of similar areas in the building where the work is better defined. This Subcontractor has included all items proper, necessary and required regardless of whether or not such work is indicated by the Drawings, with the exception of clear changes in scope.

22.  Warranties shall commence upon acceptance by the owner.

23.  Nothing listed above is meant to limit the scope of this Subcontract Agreement in any way. It is clearly understood that the lump sum amount of this Subcontract Agreement includes all of the **Millwork and Architectural Interior Sheet Metal** required for this project.

H.  **ADDITIONAL REQUIREMENTS**

1.  No right or interest in this Agreement shall be assigned by the Subcontractor without the prior written permission of the Contractor, and no delegation of any obligation owed by the Subcontractor shall be made without the prior written permission of the Contractor. Any attempted assignment or delegation shall be wholly void and totally ineffective for all purposes.

2.  The Subcontractor shall bind each sub-vendor/subcontractor to the applicable terms and conditions of this Agreement for the benefit of the Contractor. Any assignment or subcontracting allowed by the Contractor shall not relieve the Subcontractor of its obligations and liabilities

3.  This Agreement shall not be deemed an asset of the Subcontractor. If Subcontractor enters into any voluntary or involuntary receivership, bankruptcy, or insolvency proceedings, this Agreement may be canceled at the Contractor's option upon five (5) days written notice to Subcontractor.

4.  The Subcontractor shall warrant that it has the right to give the waiver, release and discharge of liens set forth herein and that it has not made any assignment of any rights to claim a lien against the Work to be performed under this Agreement.

5.  The Subcontractor shall continue performance of the Work pursuant to the terms of this Agreement despite any claim it may have against Contractor or any other party or parties to this Agreement.

Subcontractor's work shall be carried out and completed strictly in accordance with the Plans, Specifications, and all Contract Requirements governing this project and in full accordance with the terms and conditions, meaning, and intent of the Contractor's Contract with the Owner (the "General Contract"), which Subcontractor warrants that it has independently investigated and understands. A copy of said General Contract is on file at the Contractor's Office and has been inspected by the Subcontractor, and a copy of the Contract Documents is available upon request. It is further agreed that the provisions of said General Contract, including, but not limited to, the General and Supplementary Conditions, the Specifications and Plans, all Contract Requirements, and the particular Specifications relating to the work of the Subcontractor, insofar as they are applicable, are hereby incorporated herein by this reference and are binding upon the Subcontractor.

All previous oral or written promises and agreements relating to the subject matter of this contract are hereby declared to be null and void, it being expressly agreed that the terms of this Subcontract shall constitute the full and complete agreement between the parties hereto.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 064000

IN CONSIDERATION WHEREOF, the Contractor agrees to pay to the Subcontractor for the full and faithful performance by the Subcontractor of all the terms and conditions hereof the sum indicated on page one with said amount to be paid as follows: One Hundred percent (100%) of the value of work which has been placed in position to the continuing satisfaction of the Owner and for which payment has been made by said Owner to said Contractor, with zero percent (0%) retained by the Contractor until the last payment is made to the Subcontractor. Subcontractor agrees to assume the risk of payment by the Owner for Subcontractor's work. Receipt of payment from the Owner to the Contractor for Subcontractor's work is an absolute condition precedent to the Subcontractor's right to payment. If for any reason (including but not limited to the insolvency or inability to pay) the Owner does not make payment to the Contractor (including but not limited to any partial or progress payment, retainage, final payment or payments for changes, extras, modifications or the like or payment on account of any claims for delays or inefficiencies or other claims, or any other payment due on account of Subcontractor's work), Subcontractor shall not be entitled to such payment. Monthly progress payments shall be made on or about the tenth (10th) working day after Contractor is paid, except the last payment, which the Contractor shall pay to said Subcontractor immediately after said materials and labor installed by said Subcontractor have been completed, turned over, and accepted and approved by the Owner, after the final payment is received by the Contractor, and after satisfactory evidence is furnished to the Contractor by the Subcontractor that all labor, materials, equipment, appurtenances, services, etc. used or incorporated in this particular work have been paid in full.

The Subcontractor warrants that it is sufficiently fiscally responsible to carry out the work as provided in this Agreement, together with all other work it may have on hand or undertake whether it be with the Contractor or others. Should the Subcontractor's financial condition change in any manner from that at the time of entering into this Agreement, it shall immediately notify the Contractor so that procedures may be instituted to help safeguard the performance by the Subcontractor hereunder.

The Contractor may, at any time, make inquiries as to the financial condition of the Subcontractor including, but not necessarily limited to, lower-tier subcontractors, suppliers, etc. that are supplying material and/or services to the project, any other creditors, and subcontractor's banker, Certified Public Accountant, and Surety. The Subcontractor, when requested, shall furnish copies of its financial statements (certified when available) to the Contractor and shall provide such other financial and credit information in the form the Contractor may request.

The Contractor may institute such financial and other measures provided elsewhere in this Agreement when, in Contractor's sole determination, the best interests of the project would be served thereby. Nothing in these paragraphs or in any actions taken by the Contractor hereunder shall in any way relieve the Subcontractor from its duties and responsibilities as provided elsewhere in the Agreement.

THE PARTIES HERETO DO HEREBY FURTHER AGREE AS FOLLOWS:

SECOND.    Contract Documents.
The following documents are by this reference made a part of this Subcontract, and these, together with the General Contract with Owner and all drawings and specifications issued for this project, constitute the entire Subcontract and are referred to collectively as the "Contract Documents":

> Project Drawings dated February 14, 2003
> Project Specifications dated February 14, 2003
> Subsurface and Geotech Reports
> General Contract with Owner
> GSA Volume I Sections A-M
> Project Schedule
> General Decision CA010029 Dated 12/28/01
> PBS Order 3490.1

This Subcontractor's attention is directed to PBS Order 3490.1 dated March 8, 2002 for the procedure associated with document security for sensitive but unclassified paper and electronic building information. This Subcontractor and their lower tier subcontractors and suppliers shall comply with requirements of PBS Order 3490.1.

The Contractor shall have the benefit of all rights, remedies, and redress against the Subcontractor, which the Owner, by the Contract Documents, has against the Contractor. To the extent that the provisions of the Contract Documents between the Owner and the Contractor apply to the specific work of the Subcontractor as defined in this Agreement, the Contractor shall assume toward the Subcontractor all the obligations and responsibilities that the Owner, by those documents, assumes toward the Contractor. In the event of any inconsistency or conflict between the terms and conditions of this Subcontract and any other Contract Document listed above, the terms and conditions of this Subcontract shall govern.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21258-137
GSA Contract No. GS-09P-02-KTC-0001
GSA Project No. NCA00049
COST CODE: 064000

THIRD.        Execution of Work.
    The Subcontractor will promptly begin said work as soon as it is notified by the Contractor
that the ground is clear or the structure far enough advanced to allow the beginning of the portion
Included hereunder, and Subcontractor will carry forward and complete said work as rapidly as
said Contractor may judge that the progress of the structure will permit, unless detained by the
Contractor or other subcontractors in which event Subcontractor will within three (3) calendar
days of the beginning of the delay so notify the Contractor in writing. If satisfied that said delay is
caused by others than said Subcontractor hereunder, Contractor will allow additional time
sufficient in the Contractor's judgment to make up the time so lost. This paragraph shall cover
any extra work done or materials furnished under this Subcontract.

    FOURTH.        Contract Scheduling Requirements.
    In accordance with the General Conditions of the General Contract, the Subcontractor
shall provide the necessary scheduling input which shall meet the approval of the Contractor and
which shall facilitate the development of the project schedule as mentioned in the Contract
Documents. The Subcontractor shall include, in addition to normal work activity input, input
which encompasses shop drawing approvals, delivery durations for important materials and/or
equipment, resource loading (manpower, equipment, cost - labor/material), and logic relationships
with other activities including physical and site restraints.    This input shall be completed and
provided by the Subcontractor upon award of this Subcontract Agreement and at such other
times as requested by the Contractor. This input shall be submitted using a precedence based
CPM schedule utilizing the most recent version of P3 software. The Subcontractor's input shall
become the basis for the development of the required schedule and in the updating thereof as
required by the Owner and the Contractor.
    Subcontractor, at Contractor's request, agrees to attend weekly meetings to maintain a
three (3) week look ahead schedule. Subcontractor, at Contractor's request, agrees to attend
progress scheduling meetings at least once per month in order to cooperate with the
Contractor in:

    1)        Changing the logic of the schedules to reflect the progress of the work;

    2)        Developing a narrative for the reasons why logic changes were made;

    3)        Updating the individual Subcontractor activities; and

    4)        Integrating changed work into the schedules.

A schedule update will be distributed by the Contractor. Subcontractor shall review each update
and notify Contractor of any deviation contained in the update which was not agreed upon during
the monthly schedule meeting.

The integrated schedule shall become the basis of this Subcontractor's work and the
Subcontractor shall comply with it in all respects. Subcontractor shall use its best efforts to
diligently pursue its work in order to permit Contractor to meet the dates for Subcontractor's work
as they relate to its own work and the work of others and to achieve the completion dates
established in the schedule for the overall project. Subcontractor shall designate an individual
with the responsibility and authorization to progress/revise the schedule and approve changes as
required.

    FIFTH.        Delay and Default.
    The Subcontractor will furnish all supervision, labor, materials, tools, equipment,
appliances, and accessories, including all necessary scaffolding, and prosecute said work with
due diligence without delay, and will not in any manner, by delay or otherwise, interfere with the
work of the Contractor or other subcontractors. Should the Contractor conclude that the
Subcontractor is delaying said work by failure to prosecute the work with diligence; should the
Subcontractor allow judgments to be obtained and stand against it; should Subcontractor become
insolvent; should Subcontractor have a committee of creditors appointed for it; should
Subcontractor go into receivership or bankruptcy; should Subcontractor fail to pay any person or
firm that furnished material or supplied or performed labor in the prosecution or the work; or
should Subcontractor fail to perform its work with due diligence; then, if said Subcontractor fails
to remedy the situation in a period of three (3) calendar days after written notice is given to it by
the Contractor, addressed to its last known address or posted on the project, the Contractor may
declare the Subcontractor to be in default, seize and make use of the Subcontractors' tools and
equipment, and take over in whole or in part and complete the work with Contractor's own staff,
another subcontractor, or both, charging the cost of the same plus ten percent (10%) for overhead
and ten percent (10%) for profit to the Subcontractor's account. If, after the completion and
acceptance of all the work on the project, there is anything left in the Subcontractor's account,
that balance will be paid to the Subcontractor. If, on the other hand, the expense of the Contractor
completing the work is more than the balance due, the Subcontractor shall pay said amount to the
Contractor. In the event it becomes necessary for the Contractor to collect any deficiency from
the Subcontractor by legal action, the Subcontractor agrees to defray all Contractors' reasonable
attorney's fees and other court expenses in connection with such action.
    SIXTH.        Indemnification for Delay.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 31058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 064000

13 of 25

Should said Subcontractor fail to begin, continue, and complete the work as herein provided and should the Contractor suffer or permit said Subcontractor to occupy more time than required under this Agreement, in that event, said Subcontractor hereby covenants and agrees to indemnify and save harmless the Contractor from any loss or damages which it may be compelled to make good to others including, but not limited to, the Owner of said project under or by virtue of the contract with the Owner, for or on account of delay in the completion thereof, insofar as said delay was caused by said Subcontractor.

SEVENTH.        Time of the Essence and Liquidated Damages.

It is expressly UNDERSTOOD AND AGREED by and between the parties hereto that time is and shall be considered the essence of the contract on the part of said Subcontractor, and, in the event that the Subcontractor shall fail in the performance of the work to be performed under this Subcontract by and at the time or times herein mentioned, referred to, or agreed to in the project schedule developed pursuant to Article Fourth, or the Subcontractor is otherwise responsible for the late completion of the project, and a time extension has not been issued either by the Owner or the Contractor, said Subcontractor shall pay unto said Contractor, as damages, all such actual damages and liquidated damages suffered by the Contractor by reason of such default; including, but not limited to, damages assessed by the Owner pursuant to the General Contract.  The Contractor shall have the right to deduct from any monies otherwise due or to become due to said Subcontractor or to sue for and recover compensation or damages for the non-performance of this Subcontract at the time or times herein stipulated or provided for.

EIGHTH.        Extension of Time.

When extension of time for strikes, fires, casualties, weather, or for any other reason beyond its control has been granted to the Contractor by the Owner or its representative as set forth in the General Contract, the same extension, to the extent applicable, shall be granted said Subcontractor; it being expressly agreed, however, that the Contractor shall not be liable to the Subcontractor for any claims associated with any such extension of time except to the extent and amount that the Contractor is actually paid therefore by the Owner or others for the specific use and payment of Subcontractor's claim.  The Contractor merely acts as a conduit to provide the Subcontractor with contractual privity for access to the Owner or others to seek reimbursement for damages caused by such an extension of time.

No allowance for time or damages will be made to the Subcontractor for delay in preparing its submittals or in securing approval of same when such submittals are not properly prepared for approval of the Owner.

NINTH.        Claims.

If the Subcontractor is delayed in the prosecution of its work due to the acts of the Owner and/or its agents, other independent contractors of the Owner, the Contractor, or the Contractor's other subcontractors and the Subcontractor suffers delay, acceleration, loss of efficiency, extended overhead, or any other type of damages therefrom, the Contractor agrees to transmit to the Owner, other subcontractors, or other entity any such claims submitted to it by the Subcontractor.  Likewise, if the Subcontractor has any other type of claim for damages including, but not limited to, differing site conditions, changes in scope of work, disruption, loss of efficiency, cumulative impact of change orders, payment delay, or any other type of damages caused by the Owner, other independent contractors of the Owner, the Contractor, the Contractor's other subcontractors, or any other entity, the Contractor agrees to transmit to the Owner, other subcontractors, or other entity any such claims submitted to it by the Subcontractor.

The Contractor under this Article merely acts as a conduit to provide the Subcontractor with contractual privity for access to the Owner, other subcontractors, or other entity to seek reimbursement for damages incurred for such delays or other claims. It is agreed that in no event will the Contractor be liable for Subcontractor's claims for such damages except to the extent and amount that the Contractor is actually paid therefore by the Owner, other subcontractors, or other entity for the specific use and payment of Subcontractor's claim unless (a) the Subcontractor promptly and properly notifies the Contractor of a delay or other claim caused by the Contractor or other subcontractors under the control of the Contractor in writing (see Article Third, Execution of Work) and (b) the Contractor fails to correct promptly a delay or element of another claim caused solely by the Contractor or fails to transmit the Subcontractor's notification to the Owner, other subcontractors, or other entity causing the delay or other claim within seven (7) calendar days of such a notification.  The Owner's decision regarding Owner related claims and the Contractor's decision regarding all other such claims will be final and binding upon the Subcontractor subject to the disputes provisions of this Subcontract.

TENTH.        Notices.

Unless otherwise provided in the paragraphs above, including, but not limited to Article Seventh, Subcontractor agrees to follow the procedures set forth in the General Contract and to give to Contractor each and every notice, statement, and claim of any character or form in the same manner and in at least seven (7) calendar days before the end of the time period required by said General Contract for the Contractor to give notice so that any claim may be considered by the Owner. Failure to give such notice which results in the Owner denying Subcontractor's claim shall forever waive said claim against the Contractor unless the failure to give notice is waived or

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 2165R-137
GSA Contract No. GS-09P-02-KTC-0002
GEA Project No. NCA00049
COST CODE:  064000

14 of 25

extended by the Owner. Failure to provide such notice, statement, or claim in conformance with the above referenced conditions and clauses will serve to limit or bar Subcontractor in the same manner as set forth in the General Contract with the Owner.

**ELEVENTH.**     Submittals.

Submission of shop drawings, literature, and samples shall be made by the Subcontractor to the Contractor in strict conformance with the General Contract. A minimum of seven (7) copies of catalog cuts, schedules, data sheets, etc. shall be submitted for approval. Samples are required for approval in the quantity and type specified in the applicable technical specifications. Shop drawings are to be submitted as follows: one (1) reproducible transparency and three (3) opaque prints. Upon return of the approved transparency or literature to this Subcontractor, it shall print from the approved submittal a minimum of seven (7) copies for Contractor's use and return same to the Contractor's office.

**TWELFTH.**     Cooperation.

The Subcontractor and its subcontractors, if any, shall cooperate with Contractor and other subcontractors on the premises and shall so carry on their work so that other cooperating subcontractors shall not be hindered, delayed, or interfered with in the progress of their work and so that all of such work shall be a finished and complete job of its kind.

**THIRTEENTH.**     Coordination and Interferences.

The Subcontractor shall coordinate its work with that of others in order that interferences between mechanical, electrical, architectural, structural, mechanization, and other systems will be avoided. In case interference develops, the Owner and/or Contractor will determine which equipment shall be relocated regardless of which was first installed, and the Subcontractor shall be held fully responsible for the cost of relocation. Where installations are complex, coordinating layouts of work shall be prepared by this Subcontractor and shall be submitted for approval in addition to all other coordination drawings as required by the Contract Documents. Further, Subcontractor shall be required to furnish any additional information or documents for the purpose of coordination that the Contractor may require so as to facilitate the preparation of project coordination drawings and information.

**FOURTEENTH.**     Changes.

Without invalidating this Subcontract, the Contractor may add to or reduce the work to be performed hereunder. No extra work or changes from plans and specifications under this Subcontract will be recognized or paid for unless agreed to in writing before the extra work is started or the changes made. Said written order shall specify in detail the extra work or changes desired and the price to be paid or the amount to be deducted should said change decrease the amount to be paid hereunder. All such orders must be signed by an authorized representative of the Contractor. It is understood and agreed that any claims for extras demanded by the Subcontractor arising from omissions and/or discrepancies in the plans or specifications prepared by the Owner shall not be binding upon the Contractor or honored by the Contractor except to the extent approved and the extent actually paid for by the Owner. Costs for all such extra work or changes by either party shall be billed prior to and payable in the next current payment (as set forth in Article First of this Subcontract Agreement) following completion of such work and approval and payment by the Owner to the Contractor. In case the parties are unable to agree on the amount of the addition to or the reduction from the contract price, the Subcontractor shall nevertheless proceed with the work and the determination of the amount of such addition or reduction by the Owner as provided in the General Contract between the Owner and the Contractor shall be binding on the Subcontractor subject to the disputes provisions of this Subcontract.

**FIFTEENTH.**     Interpretation of Documents.

Should any dispute arise between the parties respecting the true construction of the Plans, Specifications, and Contract Requirements, the decision of the Owner or its representative as set forth in the General Contract shall be final subject to the disputes provisions of this Subcontract. In the event of any such dispute, the Subcontractor shall proceed, without interruption, with the work provided for herein, in such manner as may be directed by the Contractor, pending the decision of the Owner or its representative as set forth in the General Contract. It is further agreed that in the event of any dispute arising between the Subcontractor and the Contractor as to the scope and/or intent of this Subcontract, the Subcontractor shall proceed with its work without interruption pending settlement thereof.

**SIXTEENTH.**     Inspection.

The Subcontractor shall provide sufficient, safe, and proper facilities at all times for the inspection of the work by the Owner, the Contractor, or its authorized representatives. Subcontractor shall at once, and without extra time or pay, remove all materials and take down and rebuild all portions of the work condemned by the Owner or Contractor upon receiving notice in writing of such condemnation.

**SEVENTEENTH.**     Warranty.

Subcontractor warrants and guarantees all work in full accordance with the General Conditions of the General Contract, the other warranty and guarantee, tests and inspections, corrections, and removal or acceptance of defective work sections, and all other applicable sections of the Contract Documents.

**EIGHTEENTH.**     Equal Opportunity.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 2105A-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00043
COST CODE: 066000

19 of 25

Contractor is a federal contractor affirmative action - equal opportunity employer. As such, it is Contractor's policy that employment decisions be made without regard to race, religion, creed, sex, national origin, age, veteran status, and non-job related disability.

During the performance of this Agreement, the Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, color, religion, creed, sex, or national origin. The Subcontractor will take affirmative action to insure that applicants are employed without regard to their race, religion, creed, sex, national origin, age, veteran status, and non-job related disability. The Subcontractor will comply with all provisions of The Civil Rights Act of 1991, The American with Disabilities Act of 1990, and Executive Order No. 11246 of September 24, 1965, including all amendments, updates, and modifications to this Executive Order, and relevant orders of the Secretary of Labor, including the regulations set forth in 41 CFR 60 and subparts thereof relating to employment of minorities, females, disabled workers, and disabled and Vietnam Era Veterans.

Subcontractor shall employ minorities and females in its workforce according to the goals and timetables established by the Federal government and will exercise every good faith effort, as defined by 41 CFR 60, to achieve minority participation of 25.8 percent (25.8%) by craft and female participation of 6.9 percent (6.9%) by craft. Monthly submittals showing participation will be required. In addition, Subcontractor may be required to complete a "Certification for Utilization of Disadvantaged Business Enterprises" which validates a subcontractor's efforts to secure participation from such firms. These provisions require that good faith efforts be extended to achieve 5 percent (5%) DBE participation. In addition, the General Services Administration has established national subcontracting goals of 40 Percent (40%) for Small Businesses, 5 Percent (5%) for Small Women-Owned Businesses, 3 Percent (3%) for Small Veteran-Owned Businesses, 2 Percent (2%) for HUB Zone Small Businesses, and 1% for Small Service Disabled Veteran Owned Businesses.

The Subcontractor agrees to submit such periodic reports and cooperate in any studies or surveys as may be required by the contracting agency or the Small Business Administration in order to determine the extent of compliance by the Contractor with the Subcontracting Plan. The Subcontractors will submit Standard Form 294 (Subcontracting Report for Individual Contracts) and Standard Form 295 (Summary Subcontracting Report).

NINETEENTH.        Labor.
(a) The Subcontractor agrees that in the preparation of the material and the performance of its work, as provided herein, it will employ only such workers as will work in harmony with the other workers employed by the Contractor or other Subcontractors, and the Subcontractor further agrees that it will, at the request of the Contractor, forthwith discharge and remove from the premises to which this Subcontract applies or relates any person designated by the Contractor. The right of the Contractor to request the discharge of any workers employed by the Subcontractor shall not be construed to constitute the Contractor as the employer of any workers employed by the Subcontractor.

(b) The Subcontractor agrees to adhere strictly to all laws and to all regulations in connection with employment of labor, including, but not limited to, those contained in the specifications, bulletins, and all subsequent amendments and modifications thereof, which are part of the General Contract with the Owner and which form a part of this Subcontract. The Subcontractor further agrees that any penalty imposed upon the Contractor due to any infraction of these requirements or violations thereof by Subcontractor shall be charged to and borne by the Subcontractor.

TWENTIETH.        Project Labor Agreements.
Subcontractor agrees to become signatory and to be bound by any project labor agreement entered into by the Contractor for this project. The Subcontractor further agrees that it will employ union labor of appropriate jurisdiction in the performance of this work, unless specific permission to the contrary is given by the Contractor. If employing union labor, Subcontractor agrees to be bound by and abide by the Rules, Regulations, and Procedures of the National Joint Board for Settlement of Jurisdictional Disputes in the Building and Construction Industry in the assignment of work and/or settling jurisdictional disputes on work to be done at the project site.

TWENTY-FIRST.        Wage Rates.
Subcontractor is required to abide by applicable Federal, State and/or Local laws, rules, ordinances or regulations dealing with wage rates and conditions of employment, including, but not limited to, the Prevailing Wage Act and all provisions cited in the General Contract. Subcontractor's failure to abide by any such provisions shall be a material breach of the Subcontract Agreement which shall justify the withholding of funds from the Subcontractor, as well as entitle the Contractor to terminate this Subcontract Agreement. Subcontractor shall submit weekly-certified payrolls to Contractor, which shall evidence compliance with the prevailing minimum wage rate schedule.

The Subcontractor will, at all times, pay union labor the schedule of wages as fixed from time to time by the respective unions governing the class of laborers employed and agrees that any increase in said schedule of wages during the life of this subcontract shall be borne by the Subcontractor. Subcontractor further agrees that all wages paid pursuant to union agreements shall at all times satisfy the requirements of the Contract Documents.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 064000

16 of 25

**TWENTY-SECOND.** <u>Taxes and Laws.</u>

The Subcontractor assumes every responsibility for and agrees to pay all assessments, contributions, taxes, etc. required by the Federal Social Security Act and any Social Security Statutes of the State or States in which it may operate, now in force or which may be enacted, and generally to comply with all rules and regulations set forth thereunder. Subcontractor shall pay directly to all governing bodies all taxes (including any income, sales, occupation, use and all other taxes) in connection with its work that the Subcontractor or the Contractor is required to pay or withhold.

If the Subcontractor fails to make such payments, including but not limited to employee taxes required to be withheld by Subcontractor, Contractor may make such payments, using IRS Form 4219 in the case of employee taxes, and deduct the amount of such payments and all costs related thereto from the Subcontract amount. Contractor shall not be obligated to exercise its right to make such payments. This provision is not intended to and does not make any third person including governmental agencies a third party beneficiary of this Subcontract Agreement or any portion thereof.

Subcontractor shall comply with all Federal, State, and Local Laws and Regulations applicable to said work. In the event that the Subcontractor is found to have violated any Federal or state statute, executive order, ordinance, public building or public works contract provision or contract specification relating to discrimination in employment or fair employment practices by the appropriate commission, contract authority, or governmental agency which is charged with responsibility of enforcement of such statute, executive order, ordinance, or contract provision or contract specification, the Subcontractor shall be considered in default under this Agreement and if, after written notice from the Contractor, the Subcontractor shall fail to correct the violation within forty-eight (48) hours, the Contractor shall have the right to terminate this Agreement for such default.

The Subcontractor agrees to indemnify and save the Contractor harmless against any expenses, loss, or liability of any kind incurred by the Contractor by reason of the violation by the Subcontractor of any federal or state statute, federal executive order, city ordinance, public building or public works contract provision or contract specification relating to discrimination in employment or fair employment practices or any other legal requirement of law or regulation applying to Subcontractor's work. This provision shall be included in any contract let by the Subcontractor for any work covered by this Agreement.

**TWENTY-THIRD.** <u>Public Authorities and Permits.</u>

The Subcontractor shall obey all laws and regulations and shall secure and pay for all licenses and permits that it may require to comply fully with all laws, ordinances, and regulations of the proper Public Authorities in connection with the performance of this work. The Subcontractor shall be responsible for all damages and penalties and shall indemnify and save harmless Contractor and Owner from and against all damages, penalties, and liability which may arise out of the failure of the Subcontractor to obey all laws and regulations or failure to secure and pay for any such licenses and permits or failure to comply fully with any and all applicable laws, ordinances, and regulations.

**TWENTY-FOURTH.** <u>Safety.</u>

The Subcontractor is solely responsible for the health and safety of its employees, agents, subcontractors, and other persons on and adjacent to the Work Site. The Subcontractor, however, shall take all necessary and prudent safety precautions with respect to its work and shall comply, at Subcontractor's cost, with ALL safety policies, programs and measures initiated by the Contractor and the Owner (including substance abuse testing) and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property, including, but not limited to, the Code of Federal Regulations Title 29, Part 1926 and applicable portions of CFR 29, Part 1910 Titled "Occupational Safety and Health Standards." Subcontractor's work shall be carried out and completed strictly in accordance with the Contractor's Safety Program, which Subcontractor warrants that it has independently investigated and understands. A copy of said Safety Plan is on file at the Contractor's Office and has been inspected by the Subcontractor (A copy of the Safety Plan is available upon request). The Subcontractor shall submit for approval their substance abuse testing program. In the absence of such a program, the Subcontractor agrees to comply with the Contractor's Program.

It is also agreed that the Subcontractor shall be responsible for supplying and implementing a safety program which provides for complete fall protection for all of its workers (including its subcontractors, erectors, agents, etc.) exposed to falls above six (6) feet. The Subcontractor is responsible for ensuring that this and all other safety policies/guidelines are incorporated into any subcontracts, or lower tier contracts, which it may enter into on this Project.

The Subcontractor shall assign a competent safety representative (a) who is certified both in first aid and CPR, (b) who is experienced and capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees and the public, and (c) who has authorization to take immediate corrective measures to insure the safety of the Subcontractor's work areas. The Subcontractor's safety representative shall submit a site-specific safety plan to the Contractor for review prior to the commencement of any work activities on the project site. Subcontractor shall report within

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. WCA00045
COST CODE: 064000

17 of 25

one (1) day to the Contractor any injury to any of the Subcontractor's employees including any injury sustained by an employee of the Subcontractor's subcontractors. In addition, an OSHA AND/OR CAL/OSHA Form No. 101, "Supplemental Record of Occupational Injury and Illnesses" or equivalent and an accident investigation report shall be provided to the contractor in the event of an injury to an employee employed under this Subcontract.

As an expert in the Subcontractor's field of work, the Subcontractor's supervisor and safety personnel have sole control over all requirements for doing the work safely, and the Contractor is not responsible in any manner for the safety of the Subcontractor's work. If the Subcontractor fails to correct unsafe procedures, acts, or conditions within a twenty-four (24) hours of notification by the Contractor or any public authority, however, Contractor may (but has no contractual obligation to do so) correct the unsafe practice and backcharge the Subcontractor for these costs plus ten percent (10%) for overhead, ten percent (10%) for profit, and twenty percent (20%) for a "safety premium". This specifically includes but is not limited to the clean up of Subcontractor's construction debris and the replacement of standard railings or barricades removed by Subcontractor's employees. Conditions which constitute "imminent danger" to any employee will result in an immediate stoppage of work. No extension of time or additional compensation will be granted as a result of any stop order so issued. Repeated failures to correct unsafe practices will result in default and termination of this Subcontract pursuant to Articles Fifth and Thirty-Third without any further notice to the Subcontractor. In the event the Contractor receives a penalty from OSHA AND/OR CAL/OSHA as a result of a violation of OSHA AND/OR CAL/OSHA Standards by the Subcontractor and Contractor is cited under the multi-employer worksite rule, Subcontractor agrees to protect, defend, indemnify, and hold harmless Contractor from the imposition of any fines and/or penalties by OSHA AND/OR CAL/OSHA.

TWENTY-FIFTH.    Insurance.
Using an Insurance Company satisfactory to the Contractor, the Subcontractor shall provide adequate Worker's Compensation and Employer's Liability Insurance covering the Subcontractor's employees working on the Project and will provide General Liability, Umbrella Liability, and Automobile Liability Insurance covering the Owner, Contractor, the Architect/Engineer, the Construction Manager, and any of their respective employees and agents (the "Additional Insureds"), and the general public in accordance with all insurance requirements of the General Contract and the provisions contained herein, whichever are more stringent.

The obligation of the Subcontractor is to provide such adequate insurance to protect the Subcontractor and the Additional Insureds from all risks and/or occurrences that may arise or result, directly or indirectly, from the Subcontractor's work or presence on the jobsite and all risks of injury to Subcontractor's employees, sub-subcontractors' employees, and other agents. This obligation is in addition to and shall not limit in any way the obligations assumed by the Subcontractor in Article Twenty-Sixth or elsewhere in this Subcontract Agreement. This obligation shall not be avoided by allegations of contributory or sole acts, failure to act, omissions, negligence or fault of the Additional Insureds. Each policy of insurance shall waive subrogation against the Additional Insureds. As such, each policy of insurance provided for herein, except Worker's Compensation, shall name the Contractor, Owner, the Architect/Engineer, and the Construction Manager as an additional insured under the policy, and each policy of insurance provided for herein shall be primary with no right of contribution against the Contractor, Owner, the Architect/Engineer, the Construction Manager or their insurers.

The policies described above shall be written on a comprehensive form and shall conform to the laws of the State in which the job is located. All of the insurance specified herein shall be taken out, maintained, and paid for by the Subcontractor as part of the contract price specified in Article First.

Worker's Compensation insurance shall be in accordance with statutory requirements and Employer's Liability Insurance shall be supplied with minimum limits of One Million Dollars ($1,000,000) each accident, One Million Dollars ($1,000,000) disease - policy limit, and One Million Dollars ($1,000,000) disease - each employee.

The General Liability insurance shall include the following coverages:

(1)    Broad Form Property Damage, including Completed Operations;
(2)    The deletion of XCU Exclusions when applicable to Subcontractor's operations;
(3)    Blanket Contractual Liability;
(4)    Personal Injury Coverage that includes
        (a)    false arrest, detention or imprisonment, or malicious prosecution,
        (b)    liable, slander, defamation, or violation of right of privacy, and
        (c)    wrongful entry or eviction or other evasion of right of private occupancy;
(5)    Contractors Protective Liability if any of the work is sublet; and

The General Liability Policy shall be written at a combined minimum limit of Two Million Dollars ($2,000,000) each occurrence, Personal Injury and Advertising Injury minimum limit of Two Million Dollars ($2,000,000) each occurrence, Products-Completed Operations minimum policy aggregate of Three Million Dollars ($3,000,000) and a separate General aggregate of Three Million Dollars ($3,000,000), applied on a "per project" basis. On any, each and all trucks, automobiles or

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21858-137
GSA Contract No. GS-09P-02-KTC-0052
GSA Project No. MCA00049
COST CODE:  064000

18 of 25


vehicles owned, hired, and non-owned which are used by the Subcontractor in the performance of the work, the Subcontractor shall provide Automobile Liability Insurance with a minimum single limit of liability of One Million Dollars ($1,000,000) Bodily Injury and Property Damage combined.

The Umbrella Liability Policy shall be written at a limit of Five Million Dollars ($5,000,000) and apply excess over the Employer's Liability, General Liability, and Automobile Liability primary policies. This policy shall be written to provide policy limits on a per project aggregate basis.

Before any of the Subcontractor's employees, sub-subcontractors' employees, and other agents do any of the work on the premises under control of the Contractor, Subcontractor shall furnish the Contractor with the insurance Company's certificate that the required coverages have been provided and each certificate shall contain a provision whereby the Insurance Company shall notify the Contractor thirty (30) days prior to the expiration of any coverages contained thereon. The certificates shall contain the date when each coverage expires and a specific confirmation that the Employer's Liability, General Liability and Automotive Liability policies (a) name the Contractor, Owner, the Architect/Engineer, and the Construction Manager as additional insureds and (b) meet the "primary insurance" and "per jobsite aggregate" requirements detailed above. The Subcontractor agrees that the coverage shall not be allowed to expire until the entire work is completed and accepted.

The Subcontractor shall also carry such additional insurance in connection with the performance of the work hereunder as Contractor or Owner may specify. Subcontractor will be compensated for such additional insurance provided it is purchased through an Insurance Company satisfactory to the Contractor. Subcontractor shall promptly furnish to the Contractor certificates evidencing any such additional insurance coverage.

If a loss to the Contractor or Owner caused by the Subcontractor is covered by a Builder's Risk insurance policy taken out by the Contractor or the Owner, the Subcontractor shall pay the deductible sum for that loss to the Contractor or the Owner. Any deductible amounts paid by Subcontractor are not subject to an annual aggregate or cap.

TWENTY-SIXTH.        General Indemnification.
The Subcontractor shall protect, indemnify, hold harmless, and defend the Contractor , the Owner, the Architect/Engineer, the Construction Manager, and any of their respective employees and agents (the "Indemnitees") against any and all claims, causes of action, suits, losses, costs, or damages, including attorneys' fees, resulting from the acts, failure to act, omissions, negligence, or fault of the Subcontractor, those employed by it, or its agents, whether or not said claim, cause of action, suit, loss, cost, or damage is alleged to be caused in part by any act, failure to act, omission, negligence, or fault of any of the Indemnitees or their employees, and Subcontractor shall bear any expense which any of the Indemnitees may have by reason thereof, or on account of being charged with such claim, cause of action, suit, loss, cost or damage, unless such claim, cause of action, suit, loss, cost, or damage is solely caused by the Indemnitee's sole act, failure to act, omission, negligence, or fault.

This general indemnification obligation is in addition to, and not a limit on, the insurance obligations of the Subcontractor. If there are any injuries to persons or damages to property that are unsettled when the work herein provided for is finished and for which coverage has been denied by Subcontractor's insurer, final payment between the Contractor and Subcontractor shall be deferred until such claims are settled or suitable special indemnity acceptable to the Contractor is provided by the Subcontractor. This general indemnification obligation shall apply particularly, but not exclusively, to the claims of any other subcontractor against any of the Indemnitees for the acts, failure to act, omissions, negligence, or fault of this Subcontractor, and this Subcontractor shall have no claim against the Indemnitees for the acts, failure to act, omissions, negligence, or fault of any other subcontractor except as provided for in Article Ninth.

In any and all claims by any employee of the Subcontractor, anyone directly or indirectly employed by it, or anyone for whose acts Subcontractor may be liable, against any of the Indemnitee's, or any of their agents or employees, the indemnification obligation under this Article Twenty-Sixth shall not be limited in any way by any limitation on the amount or type of damages or the compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts, or other employee benefit acts.

TWENTY-SEVENTH.    Gifts, Exchanges, Rentals, or Loans.
In the event that the Contractor gives, exchanges, rents, or loans material, scaffolding, equipment, machines, and/or tools to the Subcontractor, and whether or not such gift, exchange, rental, or loan includes the providing of Contractor's operator or other personnel, the Subcontractor hereby agrees to make no claim whatsoever against the Contractor for any personal injuries or property damages caused in the course of carrying out such a gift, exchange, rental, or loan. It is further understood and agreed that in the event that such material, scaffolding, equipment, machines, and/or tools are used, handled, or operated by employees or agents of Contractor, such operators or other personnel, for the purpose of this Agreement and for such purpose only, shall be considered subject to the direction and control of Subcontractor so that the Subcontractor, as between the Contractor and Subcontractor, shall be considered as

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCAS0049
COST CODE:  064000

19 of 25

being liable for any and all acts, failure to act, omissions, negligence, or fault of such operators or other personnel.

The Subcontractor hereby agrees to protect, indemnify, hold harmless, and defend the Contractor against any and all claims, causes of action, suits, losses, costs, or damages, including attorneys' fees, suffered by anyone arising from the Contractor's gift, exchange, rental, or loan of any such material, scaffolding, equipment, machines, and/or tools. This indemnification shall apply regardless of whether or not such personal injuries or property damages may be the result of the acts, failure to act, omissions, negligence, or fault, in whole or in part, of the Contractor or its employees or otherwise due to any act, failure to act, omission, negligence, or fault of Contractor or its employees.

TWENTY-EIGHTH.    Patent or Copyright Infringement.

The Subcontractor hereby covenants and agrees to protect, indemnify, hold harmless, and defend the Contractor from any and all manner of claims or suits for infringement of patents or copyrights or violation of patent rights associated or related in any way to the Subcontractor's work under this Agreement, including all costs and expenses to which the Contractor may be put in investigating or defending any claims or actions that may arise under this clause of the Subcontract.

TWENTY-NINTH.    Accounting.

Subcontractor shall prepare a monthly "draft" invoice to be reviewed and approved by the Contractor Field Office and/or Owner and shall submit this draft to the Contractor at least five (5) working days prior to the due date for the original invoice.  Upon review and approval, Subcontractor shall prepare original invoice.

The Subcontractor's original invoices shall be submitted to Contractor's Accounting Department in Pittsburgh, Pennsylvania before the 25th of the month, with a copy to Contractor's Field Office.  Invoices arriving later that the 25th of the month shall be held for the following requisition.  Subcontractor will refer to the Subcontract Agreement Number referenced on the first page of this Agreement for the convenience of our Accounting Department when submitting invoices relative to the aforesaid project.  Invoices for this Subcontract will not be allowed until material receiving reports have been filled out and forwarded to Contractor.

Prior to receipt of any progress payment, the Subcontractor shall execute and deliver to the Contractor Exhibit "A" entitled "Requisition, Waiver and Release of Lien", Exhibit "B" entitled "Subcontractor's Estimate", Exhibit "C" entitled "Affidavit", Exhibit "C-1" entitled "Subcontractor's Detail Lower-Tier Orders" and Exhibit "D" entitled "Lower-Tier Subcontractor, Materialmen, Equipment Lessors, Waiver of Lien and Release", all of which forms are attached and made a part of this Subcontract Agreement. Exhibits "C, C-1 and D" shall be required at the discretion of the Contractor.

If for any reason the Contractor deems it necessary under the terms and conditions of this Agreement to withhold from the Subcontractor money retained or any other money claimed by the Subcontractor, then the Contractor shall not be liable for payment of interest on said money.  This withholding shall include, but shall not be limited to, money withheld because of Subcontractor's refusal to sign Exhibits "A", "B", or "C", by incomplete or unsatisfactory work, by disputed claims, or by claims of unpaid lower-tier subcontractors or suppliers.

Should the Contractor make advance or late payments to the Subcontractor or payments otherwise at variance with the terms and provisions of this Subcontract, the Contractor's rights and remedies under this Subcontract, and under any bond given to the Contractor in pursuance of the requirements of this Subcontract, shall in no way be impaired or prejudiced.

Contractor may retain and use any amounts due and owing to Subcontractor under this Subcontract to offset invoices, backcharges, charges or any other amount due Contractor under this Subcontract or arising out of Subcontractor's performance on this Project. Additionally, if Subcontractor has other contact(s) with the Contractor or affiliates of Contractor, Contractor may retain and use amounts due and owing to Subcontractor from the performance of this Subcontract to offset any invoices, backcharges, charges or any other amount due Contractor or Contractor's affiliates on such other contract(s).

THIRTIETH.    Financial Disclosure.

Subcontractor expressly agrees to provide financial and/or accounting information reasonably requested by Contractor for analysis and verification of invoices and credit and for verification of payments by Subcontractor on account of orders made to perform the work hereunder.

THIRTY-FIRST.    Investigation of Claims.

If a claim is made against the Contractor by any person, firm, or corporation for labor, material, equipment, or services furnished to said Subcontractor in connection with this Subcontract, the Contractor shall have the right to employ its representative to investigate such claim and to charge all expenses of such investigation to the Subcontractor. The Subcontractor further agrees, if any suit is brought against the Contractor and its sureties by any person, firm, or corporation on account of any claim for labor, materials, equipment, or services furnished or

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00069
COST CODE:  051000

20 of 25

alleged to have been furnished to said Subcontractor in connection with this Subcontract, that the Contractor shall be permitted to employ its own counsel to defend such suit and that Subcontractor shall repay the Contractor for such counsel fees and all other costs and expenses to which the Contractor may be put in defense of such suit.

THIRTY-SECOND.    Payment of Subcontractor's Obligations.

In the event that the Subcontractor fails to pay and discharge when due any bills of any kind or nature whatsoever incurred by said Subcontractor in fulfillment of this Subcontract, which bills in the opinion of the Contractor are proper, the Contractor may (at its option, but it is to be specifically understood that the Contractor is not compelled to do so) and is hereby authorized to pay such bills. The Subcontractor hereby specifically appoints the Contractor as its lawful agent and attorney-in-fact to pay and discharge the aforementioned bills and to deduct the amount of such bills from any estimate due or to become due the Subcontractor, as well as any expense incurred in the payment of said bills, including interest, and the Subcontractor hereby empowers the Contractor as the agent and attorney-in-fact of the Subcontractor to exercise Contractor's best judgment in determining the validity of such bills, the Subcontractor hereby specifically waiving any right of redress or recovery against the Contractor by reason of any act of the Contractor while acting as agent and attorney-in-fact of the Subcontractor.

In addition to the foregoing, the Subcontractor hereby agrees to permit the Contractor to issue joint payment checks to the Subcontractor and any of the Subcontractor's equipment lessors, material suppliers, or anyone else to whom the Subcontractor owes money for this particular project. The Contractor will not be under any obligation, however, to issue joint payment checks, but may do so in the event that there is a reasonable likelihood that such obligations of the Subcontractor, as described above, may not be timely paid by the Subcontractor and/or could become the obligation of the Contractor under any surety bond issued by the Contractor or under the applicable mechanic's lien law.

Should the Contractor pay such bills in an amount in excess of any estimates due or to become due to the Subcontractor, then the Subcontractor shall pay the Contractor any such excess, including such expense and interest, if any, and such payment by the Contractor shall in no way prejudice or impair Contractor's rights and remedies under this Subcontract and under any bond given in pursuance of the requirements of this project.

The Subcontractor shall protect, indemnify, defend and hold harmless the Contractor from Subcontractor's failure to properly pay any laborer, supplier, subcontractor, and/or equipment lessor for work, materials, and/or equipment supplied to the project.

THIRTY-THIRD.    Termination or Suspension.

The Contractor may terminate or suspend this Subcontract in whole or, from time to time, in part for the default of the Subcontractor or for the convenience of the Contractor. In the event of the termination or suspension of the Contract between the Contractor and the Owner, this Subcontract shall also be terminated or suspended. In any termination, the Contractor shall be liable only for acceptable labor and material furnished up to the date of the receipt of notice of such termination and shall not be liable for any loss of anticipated profits on labor and material not yet furnished. The Subcontractor further agrees that it has thoroughly familiarized itself with the General Contract, including all Attachments and Exhibits, between the Contractor and the Owner and agrees to be bound in accordance with the terms of these Contract Documents, insofar as is applicable to the work of the Subcontractor, and to give the Contractor the same power and rights as regards terminating (whether for default or convenience) or suspending this Subcontract that the Owner may exercise over the Contractor under any provisions of the General Contract.

THIRTY-FOURTH.    Waiver of Liens, Final Payment & Release of Claims.

Subcontractor hereby waives and relinquishes the right to have, file, or maintain a mechanic's lien or claim for or on account of the work done or materials furnished by it under this Subcontract. Furthermore, if the General Contract with the Owner is a no-lien agreement that includes a waiver of liens form to be completed by the Contractor, Subcontractor shall also execute and submit this form to the Contractor before the commencement of any work activities on the project site. Prior to receipt of final payment, the Subcontractor shall be required to execute the following forms: Exhibit "A", "Requisition, Waiver and Release", checking the "final" block; Exhibit "C", "Subcontractor's Affidavit"; Exhibit "C-1", "Subcontractor's Detail Lower Tier Orders"; and Exhibit "D", "Lower Tier Subcontractor, Materialmen, Equipment Lessors. Waiver of Lien and Release", checking the "final" block, from any and all lower tier entities as Contractor may require. All the above referenced forms are attached hereto and made a part hereof.

THIRTY-FIFTH.    Special Conditions.

(a)    Bonds. Unless otherwise stated in this Subcontract, the Contractor reserves the right to require the Subcontractor to furnish Performance and Payment Bonds at any time during the duration of this Subcontract Agreement. If the Contractor requires the Subcontractor to furnish Performance and Payment Bonds under the provisions of this subparagraph, the Contractor will pay for the customary premiums for such bonds directly to Subcontractor's surety. The premium expense shall be included in Subcontractor's price.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 31088-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00043
COST CODE: 064066

11 of 25

(b)    Survey and Dimensions.  Subcontractor shall be responsible for its own survey layout from one bench and line, i.e., coordinates, provided by Contractor in accordance with the Contract Documents.  No work may proceed until Subcontractor has checked and verified all dimensions shown on Contract Documents and advised all entities engaged in the work of final dimensions to be used.

(c)    Existing Conditions.  Subcontractor must assume all risks pertaining to existing site conditions and access to the site as provided in the General Contract with the Owner.

(d)    Laydown.  The Subcontractor shall at its own expense provide its own space for storage, laydown, etc., beyond the space designated by Contractor within the space allocated by the Owner which must be shared by all subcontractors as directed by the Contractor.

(e)    Temporary Light.  In the event that a temporary lightman is required while the Subcontractor is working premium time or using a hoist on premium time, the Subcontractor will be responsible for making the necessary arrangements with the electrical subcontractor for necessary temporary light service.

(f)    Clean-up.  The Subcontractor promises to progressively and continually clean its work area and remove from the site all cuttings, cartons, and debris.  The Subcontractor shall also perform all final clean-up required by applicable sections of the Contract Documents.

If the Subcontractor is lax in its cleaning, the Contractor's superintendent will give notice to Subcontractor's field personnel and forward written notice to the Subcontractor's home office that the cleaning is not being kept current and will proceed to perform the Subcontractor's cleaning on a cost plus ten percent (10%) overhead, and ten percent (10%) profit basis within twenty-four (24) hours of notification.  Furthermore, if Contractor determines that Subcontractor's clean-up is creating a safety hazard, Subcontractor will also be assessed the twenty percent (20%) "safety premium" pursuant to Article Twenty-Fourth.

(g)    Parking.  Subcontractor is responsible for its employee parking.  Any costs associated with the movement of its employees from parking areas to work areas will be by the Subcontractor.

(h)    Work Hours.  All subcontractors shall work the same standard work hours (unless the subcontractor is behind in its work and no time extension has been granted) as determined by the Contractor after Contractor consults with the subcontractors.

(i)    Testing.  This Subcontractor shall coordinate and cooperate with all other subcontractors in connection with design, erection, inspection, component or unit testing, start-up, systems tests, final tests, and acceptance tests.

(j)    Subcontractor's Changes.  If the Subcontractor changes any of the requirements or details in conjunction with its work or the work of others on this project, these changes must be specifically and timely brought to the Contractor's attention in letterform in addition to showing them on the shop drawings.  If this requirement is not complied with and changes so made cause additional cost to Contractor or others, the Subcontractor making such undocumented changes will be required to bear all additional costs.

(k)    As-Built Records.  Subcontractor shall keep records of its work as installed, including any changes or adjustments made from the Contract Documents; Subcontractor shall transcribe all such records on to a record set of drawings as the work progresses; and Subcontractor shall furnish a final record drawing set at the completion of its work.

(l)    Manufacturer's Information.  The Subcontractor shall also provide all required manufacturer's literature, operating and maintenance manuals, and training of Owner's personnel, including the presence of factory representatives, as required by the Contract Documents.

(m)    This Subcontractor shall abide by and insert a specific reference to the General Contract including a specific incorporation of the following clauses:  *Davis-Bacon Act, Contract Work Hours and Safety Act -- Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination -- Debarment, Disputes concerning Labor Standards, and Certification of Eligibility* in any lower tire subcontract.

(n)    Partnering.  Subcontractor, at Contractor's request, agrees that a corporate representative or officer of the Subcontractor will be made available to attend partnering sessions with the Owner to facilitate project communication and cooperation.

(o)    Systems.  The Subcontractor represents and warrants that any system, process or equipment that contains any software or firmware provided under this Subcontract shall:

i.    be able to accurately process date and time data (including calculating,

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. MCA00049
COST CODE:  064000

22 of 25

04/11/2008　10:59　19495⬤88　　MUZI ASSOCIAT⬤ 

comparing, and sequencing) from, into, between, and among (i) all
centuries including the twentieth and twenty-first centuries, (ii) all calendar
years including the years 1999 and 2000, and (iii) and all loap years,

ii.　　be able to perform such calculations and properly exchange date and time
data when used in combination with any system, process or equipment
being acquired for the Project from third parties, and

iii.　　be able to perform such calculations and properly exchange date and time
data when used in combination with any system, process or equipment
currently existing on the project.

The duration of this warranty and the remedies available to the contractor for breach of this
warranty shall be as defined in the general warranty provisions of this Subcontract, provided that
notwithstanding any provision to the contrary in such warranty provisions, or in the absence of
any such warranty provisions, the remedies available to the contractor under this warranty shall
include, at no cost to the Contractor, repair or replacement of any listed item whose non-
compliance is discovered and made known to the Subcontractor.

Nothing in this Article shall be construed to limit any rights or remedies the Contractor may
otherwise have under this Subcontract.

(p)　　The Contractor's failure to exercise any right hereunder or to insist upon the
performance of any of the terms, covenants or conditions of the Subcontract shall not be
construed as a waiver or relinquishment of the requirement for future performance of such
covenants or conditions by Subcontractor. All obligations of Subcontractor with respect to future
performance shall continue in full force and effect.

THIRTY-SIXTH.　　Assignment.
The Subcontractor will not sell, assign, sublet, transfer, or set over this Subcontract or any
part thereof or interest therein or assign any monies due hereunder without the written consent of
the Contractor. Any part of the work provided for herein which may be sublet by the
Subcontractor shall be by written agreement only, upon the same form of agreement as this
Subcontract, and shall be approved by the Contractor and shall expressly provide that the work
so sublet shall be performed strictly in accordance with and governed by all contract conditions
applying to this Subcontract Agreement and the General Contract. Copies of all subcontract
agreements and purchase orders issued by Subcontractor shall be provided to the Contractor
upon their issuance.
THIRTY-SEVENTH.　　Severability.
If any one or more of the provisions contained in this Subcontract, for any reason, are held
to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability
shall not affect any other provision hereof, and this Subcontract shall be construed as if such
invalid, illegal, or unenforceable provision had never been contained herein.

THIRTY-EIGHTH.　　Choice of Law and Disputes.
(a) The performance of this Subcontract and all of its terms and conditions, as well as any
arbitration or judicial proceeding, shall be interpreted and governed by the laws of the State of
California.
(b) Subcontractor agrees that any dispute of any kind, nature or description or any
controversy or claim arising out of or relating to this Subcontract or the breach thereof may, at the
mutual agreed upon election of the parties, be settled by non-binding mediation or by binding
arbitration in accordance with the Construction Industry Arbitration Rules of the American
Arbitration Association. In any such arbitration, full discovery will be allowed as described in the
Federal Rules of Civil Procedure, and any remedy or relief granted by the arbitrator(s) shall be in
accordance with the terms of this Subcontract as interpreted under and governed by the laws of
the jurisdiction identified in paragraph (a), above. In any such arbitration, the arbitrator(s) shall
not be empowered or authorized to add to, subtract from, delete or in any other way modify the
terms of this subcontract. If arbitration is so elected by the Contractor, then judgment upon the
award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. If the
Contractor elects to proceed by arbitration, the venue of such proceeding shall be the project
area.
(c) Contractor shall have the right to elect to proceed to non-binding mediation or binding
arbitration, as described in paragraph (b) above, at any time prior to the commencement of a
judicial proceeding by the Contractor, or in the event a judicial proceeding is instituted by the
Subcontractor, at any time prior to the last day to answer and/or appear to a Summons and/or
Complaint of the Subcontractor.

(d) If the Owner and the Contractor, pursuant to the General Contract or by agreement,
submit any dispute, controversy, or claim between them to arbitration or some other disputes
resolution procedure specified in the General Contract and such a matter involves or relates to a
dispute, controversy, or claim between the Contractor and the Subcontractor, Subcontractor

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-82-KTC-0002
GSA Project No. WCA00043
COST CODE: 064000

23 of 25

agrees (i) to join in and be bound by the same arbitration or other disputes resolution procedure upon written request by the Contractor and (ii) to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted. If the Owner refuses to allow this joinder of the Subcontractor, Subcontractor agrees (i) to cooperate with the Contractor, (ii) to assist in the discovery and other preparations for the hearing, (iii) to make available its employees for testimony before or at the hearing, (iv) to share proportionately the costs and legal fees associated with the preparation for and execution of the hearing, (v) to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted, and (vi) to be bound by the results of the arbitration or other disputes resolution procedure as it relates to the dispute, controversy, or claim of the subcontractor.

(e)  To the extent that any dispute, controversy, or claim arises hereunder and a suit is instituted, it shall be brought in and before the State or Federal Court of the project location wherein exclusive jurisdiction shall lie. Notwithstanding the above, if the Owner is joined by the Contractor in any such suit, Subcontractor hereby stipulates that it shall agree to move the suit to the venue of the project site and/or to the disputes resolution forum specified in the General Contract upon the request or motion of the Contractor.

(f)  Subcontractor shall insert a provision identical to this Article Thirty-Eighth into all of its sub-subcontracts for the project. Nothing in this section shall be deemed to waive, alter or modify any condition precedent to suit contained in any other provision of the Subcontract or to give the sub-subcontractors any contractual privity with or rights against the Contractor.

(g)  No action or proceeding shall lie or shall be maintained by Subcontractor against the Contractor unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the Final Application for Payment or, if this Subcontractor or performance under this Subcontract is terminated by the Contractor, unless such action or proceeding is commenced within one (1) year after the date of such termination.

THIRTY-NINTH.    Headings.
The headings inserted in this Subcontract Agreement are for convenience only and shall in no way affect the interpretation of this Agreement.

FORTIETH.    Owner Approval, Succession of Interests and Modification.
It is understood and agreed that the Owner has the right to approve or disapprove the employment of this Subcontractor and in the event that the Owner does not execute the General Contract with the Contractor or does not approve this Subcontract, this Subcontract shall become null and void. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and permitted assigns of the parties hereto, but no third party benefits are created by this Subcontract and no modification of this Agreement shall be binding upon the Contractor unless such modification is in writing and signed by the Contractor.

FORTY-FIRST. California License
California law requires that contractors and Subcontractors be licensed and regulated by the Contractors' State License Board which has jurisdiction to investigate complaints against contractors and subcontractors if a complaint regarding a latent act or omission is filed within four (4) years of the date of the alleged violation.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first hereinabove written.

Witness: _____
Sarah Silva, Marketing
            Coordinator

Subcontractor
ISEC, Incorporated
By _____
Representative of Subcontractor Authorized
to Execute Subcontract
Mike Polanchyck
Title: Vice President

Date: October 7, 2002

Contractor
Dick / Morganti Joint Venture

By _____

Title: _____

Witness: _____

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21038-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE:  064000

24 of 25

Date:

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-137
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. RCA00069
COST CODE: 064D00

25 of 25

# EXHIBIT "B"

American Casualty Comp~ ~nf Reading, PA, *Bond No. 929256521, 92926~~9~*
National Union Fire Insur~ ~mpany of Pittsburgh, PA *Bond No. 2601~*

| PAYMENT BOND (See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) August 13, 2002 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) Dick/Morganti/Nibbi, A Joint Venture 1900 State Route 51 Large, PA 15025 | TYPE OF ORGANIZATION ("x" one) |
|---|---|

INDIVIDUAL ☐   PARTNERSHIP ☐
JOINT VENTURE ☒   CORPORATION ☐

STATE OF INCORPORATION

| SURETY(IES) (Name(s) and business address(es)) American Casualty Company of Reading, PA CNA Plaza, Chicago, IL 60685 National Union Fire Insurance Company of Pittsburgh, PA 70 Pine Street, New York, NY 10270 | PENAL SUM OF BOND |
|---|---|

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 600 | 000 | 00 |

CONTRACT DATE: May 8, 2002   CONTRACT NO: GS-09P-02-KTC-0002

**OBLIGATION:**
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**
The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**
The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| SIGNATURE(S) | 1. Dick/Morganti/Nibbi, or Joint Venture (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. John L. Sebastian, Corporate Vice President, Dick Corporation Authorized Representative of the Joint Venture | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | NAME & ADDRESS | American Casualty Company of Reading, PA Two Chatham Center, Pittsburgh, PA 15230 | STATE OF INC. PA | LIABILITY LIMIT $35,962,000.00 | |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. Jean Brooker | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Jean Brooker, Attorney-in-Fact | 2. | | |

NSN 7540-01-152-8081.
Previous edition not usable

EXPIRATION DATE 12-31-92     25-205

STANDARD FORM 25-A   (REV. 1-90)
Prescribed by GSA – FAR (48 CFR) 53.228(c)

### CORPORATE SURETY(IES) (Continued)

| | NAME & ADDRESS | National Union Fir       ce Company of Pittsburgh, PA 70 Pine Street, New York, NY 10270 | | STATE N | LIABILITY LIMIT $280,997,000.00 | |
|---|---|---|---|---|---|---|
| **SURETY B** | SIGNATURE(S) | 1. *Jean Brooker* | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Jean Brooker, Attorney-in-Fact | | 2. | | |
| **SURETY C** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY D** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY E** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY F** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY G** | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporation executing the bond as sureties must appear on the Department of the Treasury's List of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)."

in the space designated "SURETY(IES)" on the face of the form insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# EXHIBIT "C"

Bond Numbers 929256321, 929264499 and 260161

| CONSENT OF SURETY AND INCREASE OF PENALTY | 1. CONTRACT NUMBER GS-09P-02-KTC-0002 | 2. MODIFICATION NUMBER | 3. DATED March 6, 2003 |
|---|---|---|---|

4. The surety (co-sureties) consents (consent) to the foregoing contract modification and agrees (agree) that as (their) bond or bonds shall apply and extend to the contract as modified or amended. The principal and surety (co-sureties) further agree that on or after the execution of this consent, the penalty of the performance bond or bonds increased by $133,826,918.07 dollars ($133,826,918.07) and the penalty of the payment bond or bonds is increased by $133,826,918.07 dollars ($133,826,918.07) However, the increase of the liability of each co-surety resulting from this consent shall not exceed the sums shown below.

| 5. NAME OF SURETY(IES) | 6. INCREASE IN LIABILITY LIMIT UNDER | 7. INCREASE IN LIABILITY LIMIT UNDER |
|---|---|---|
| A. American Casualty Company of Reading, PA | $35,962,000.07 | $35,962,000.07 |
| B. Continental Casualty Company | $69,761,265.22 | $69,761,265.22 |
| C. National Union Fire Insurance Company of Pittsburgh PA | $28,103,652.78 | $28,103,652.78 |

| E. INDIVIDUAL PRINCIPAL | A. BUSINESS ADDRESS | B. SIGNATURE | |
|---|---|---|---|
| | | C. TYPED NAME AND TITLE | (Affix Seal) |
| | | D. DATE THIS CONSENT EXECUTED | |

| 9 CORPORATE PRINCIPAL | A. CORPORATE NAME AND BUSINESS ADDRESS Dick/Morganti/Nibbi, A Joint Venture 1900 State Route 51 Largo, PA 15025 | B. PERSON EXECUTING CONSENT (Signature) BY C. TYPED NAME AND TITLE John T. Sebastian Corporate Vice President (Dick) Authorized Representative of the Joint Venture | (Affix Corporate Seal) |
| | | D. DATE THIS CONSENT EXECUTED | |

The Principal or authorized representative shall execute this Consent of surety with the modification to which it pertains. If the representative (e.g. attorney-in-fact) that signs the consent is not a member of the partnership, or joint venture, or an officer of the corporation involved, a Power-of-Attorney or a Certificate of Corporate Principal must accompany the consent.

### 10. CORPORATE/INDIVIDUAL SURETY (CO-SURETIES)

| | A. CORPORATE/INDIVIDUAL SURETY'S NAME AND ADDRESS | B. PERSON EXECUTING CONSENT (Signature) | |
|---|---|---|---|
| A | American Casualty Company of Reading, PA CNA Plaza Chicago, IL 60685 | BY C. TYPED NAME AND TITLE Jean Brooker Attorney-in-Fact | (Affix Corporate Seal) |
| | | F. DATE THIS CONSENT EXECUTED 3/13/03 | |
| B | Continental Casualty Company CNA Plaza Chicago, IL 60685 | BY C. TYPED NAME AND TITLE Jean Brooker Attorney-in-Fact | (Affix Corporate Seal) |
| | | D. DATE THIS CONSENT EXECUTED 3/13/03 | |
| C | National Union Fire Insurance Company of Pittsburgh, PA 70 Pine Street New York, NY 10270 | BY C. TYPED NAME AND TITLE Jean Brooker Attorney-in-Fact | (Affix Corporate Seal) |
| | | D. DATE THIS CONSENT EXECUTED 3/13/03 | |

Add similar signature blocks on the back of this form if necessary for additional co-sureties.

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 1415 (REV. 7-1903)
Prescribed by GSA-FAR (48 CFR) 53.228(f)

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES FOR USE AND BENEFIT OF ISEC, INC.

## DEFENDANTS

DICK MORGANTI, DICK CORPORATION, THE MORGANTI GROUP, ETC., ET AL.

E-filing

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

ANDREW C. MUZI, ESQ.
MUZI & ASSOCIATES
1851 E. FIRST STREET, SUITE 1257
SANTA ANA, CALIFORNIA 92705
(949)553-9277

Attorneys (If Known)

**ADR**

**PJH**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [X] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

40 U.S.C. SECTION 3133 IN THAT THIS MATTER INVOLVES A CAUSE OF ACTION AGAINST A PAYMENT BOND POSTED PURSUANT TO THE MILLER ACT.

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 480,249.87
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE CHARLES R. BREYER    DOCKET NUMBER 3:07-CV-02564-CRB

DATE
APRIL 11, 2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

NDC-JS44

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611018073
Cashier ID: almaceh
Transaction Date: 04/11/2008
Payer Name: WILLIAM COLE INC
------------------------------------
CIVIL FILING FEE
 For: ISEC
 Case/Party: D-CAN-3-08-CV-001932-001
 Amount:      $350.00
------------------------------------
CHECK
 Check/Money Order Num: 16467
 Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00

PJH


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it  was drawn.